# 1

Argued and submitted December 6, 2007, judgment modified to reduce amount of equalizing judgment in favor of wife to $95,430; otherwise affirmed February 13, 2008

In the Matter of the Marriage of

Denise R. OLSON,
*Petitioner-Respondent,*

*and*

Dale D. OLSON, Jr.,
*Respondent-Appellant.*

Lane County Circuit Court
150601993; A133591

178 P3d 272

 .

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

In this appeal from a dissolution judgment, husband assigns error to the trial court's equal division of an 80-acre parcel of rural land that husband inherited from his father during the parties' marriage. Husband asserts that the trial court failed to properly follow the property division template that the Supreme Court set out in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), and that, if the court had done so, it either would have altogether excluded the inherited property from division, or it would have awarded wife only a small portion of the property's value. On *de novo* review, ORS 19.415(3), we modify the award of the inherited property and otherwise affirm.

■ Although we are exercising *de novo* review, "we defer to the trial court's express and implied credibility findings." *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). This is a case in which much of the evidence that the parties adduced was disputed, and the trial court made several express findings of fact. On appeal, the parties argue at length about the extent to which the trial court's disposition of the inherited property may have depended on implied findings of fact that, in turn, relied on unstated credibility determinations. We take a cautious approach in that regard because, beyond its express findings, we cannot discern to what extent the trial court's decision may have depended on implied findings of fact. Accordingly, we defer only to credibility determinations that the trial court necessarily made in connection with its express findings of fact.

The parties were married in July 1995, and the judgment dissolving their marriage was entered in September 2006. At the time of dissolution, husband was 42 years old, and wife was 36. They have two children, ages three and seven at the time of the dissolution. Wife was awarded custody of the children. Husband's gross employment income was approximately $60,000 per year, and wife, who received a master's degree during the marriage, earned about $41,000 per year.

When the parties were married, husband's father owned and lived on the property in dispute here, which consists of 80 acres of land, some improvements, and growing timber. Husband's father lived in a dilapidated residence on the property; the primary value of the residence lay in its land use role in securing a grandfathered home site. Husband had a strained relationship with his father. However, husband was closer to his father than were any of the father's other relatives. While the parties were married, husband performed tree harvesting, planting, and husbandry on the property, and wife also helped with some of the physical work on the property. The parties also camped on the property and used it for recreational purposes from time to time. In 1996, the parties discussed the possibility of buying the property from husband's father through a land sale contract and building a house on the property. The transaction would have required some land use modifications, and wife spent considerable time and effort researching that issue. The parties spent approximately $3,000 in investigating and preparing for the transaction.

The parties' relationship with husband's father deteriorated in 1997, when an altercation between husband and his father resulted in the father's obtaining a judicial restraining order against husband. Wife also had a falling out with husband's father. Husband hired an attorney to make a claim against his father for services performed in relation to the property. In June 1997, the attorney sent a letter to husband's father's attorney in which, among other things, husband's attorney stated that "[o]ver an approximately seven year period, [husband] and [wife] invested considerable time, effort, and expense into your client's property and the harvesting of timber from that property." As a consequence of the rift with husband's father, the parties' plans to move onto the property were shelved. Wife had nothing further to do with husband's father. Eventually, husband and his father resumed a relationship of sorts, but they were not close.

Husband's father died in 2000. Husband was the sole devisee under his father's will and the personal representative of his father's estate. The principal asset of husband's father's estate was the property in dispute here. In

2002, husband executed a personal representative's deed conveying the property to himself. The property was worth $330,000 at that time. Husband testified that he told wife that the property would be his alone; wife testified that husband did not place ownership of the property in their joint names because it would belong to both of them anyway.

During the period of estate administration, the parties intermingled their personal financial affairs with those of the estate. Husband sold some estate equipment and deposited the proceeds in the parties' joint account. The parties spent approximately $10,000 of their own funds to pay the estate's attorney fees; husband claimed that he deposited $9,000 in social security benefits belonging to his father into the parties' joint bank account so as to "offset" that payment, but there is no documentary evidence that he did so. Wife paid approximately $3,000 from the parties' joint funds for property taxes on the property; husband claimed that she "secretly" made the payment, but wife denied that the payment was surreptitiously made. After the property was distributed to husband, the parties also filed a joint income tax return for 2004, in which they claimed a $14,000 loss for the property as a farming operation.[1] Among the deducted expenses were vehicle and fuel expenses, supplies, and utility bills for the property. The parties also performed substantial cleanup and garbage removal work on the property after husband's father's death. Finally, after husband's father's death, the parties resumed using the property as a private recreational area. At the time of trial, the property was worth $465,000.

The trial court made the following findings concerning the extent to which the property was integrated into the parties' affairs after husband inherited the property:

> "After the death of [husband's father], I find that [wife] has been actively involved in efforts to complete the estate, to investigate the possibilities of the value of the property such as determining whether or not it might be eligible for a Measure 37 claim, whether or not there might be an easement available across the property to support such a claim.

---

[1] Approximately $4,000 of that amount was depreciation; the balance was out-of-pocket expense.

She assisted to whatever extent—I find that she did assist in various other activities on the property, including fence building and to some degree removal of obnoxious weeds, blackberries. *I find that she—and in part because of the use of the joint account, had enough participation with this property that while he says, today, that he didn't want her to have any part of it, I find that it is a marital asset and it's to be divided between these parties."*

(Emphasis added.) In making the quoted findings—especially the emphasized statement—the court appeared to adopt wife's version of the facts to the effect that husband intended to integrate the property into the parties' financial affairs, at least until their marriage failed. Because that determination necessarily depended on an assessment of witness credibility, we defer to the trial court's assessment.

In order to place in context the parties' arguments on appeal, we briefly review the overall economic resolution that the trial court effected in the dissolution judgment. As discussed, wife received custody of the children; husband was ordered to pay child support under the Uniform Child Support Guidelines in the total amount of $940 per month. Wife did not receive a spousal support award. With respect to the division of property, the court equally divided the parties' vehicles and other personal property, including any proceeds of a personal injury claim that wife had made. Each party also received retirement accounts with a value of $111,000. The court awarded the marital residence to wife. The residence was valued at $215,000, and it was subject to an encumbrance in the amount of $105,864, leaving equity of $109,136.

The inherited property was the sole remaining asset. The trial court reduced its value by eight percent, the projected cost of its sale, which yielded a net value of $427,800. The court awarded the inherited property to husband, and it then equalized the overall property division by awarding wife a judgment in the amount of $155,000, payable from either the proceeds of sale or refinance of the property. Accordingly, by the trial court's calculations, wife received a real property interest valued at $264,136. Husband received a net interest in the inherited property of $272,800 ($427,800 minus $155,000), which was further offset by a pretrial attorney fee

judgment to wife in the sum of $5,000 and marital debts in the amount of $3,000, thus resulting in a virtually equal net division of the parties' assets.

■ ■ In his assignment of error on appeal, husband asserts:

> "The [trial] court erred in equally dividing the value of [the inherited property]. The error included both the error in equally dividing the value as first inherited by husband, and in equally dividing the appreciation. To the extent it is implied in the court's ruling, the error includes any finding as to husband's failure to rebut the presumption of equal contribution and any finding as to the property having been commingled."

. ORS 107.105(1)(f) provides, in part, that a court may provide in a judgment of dissolution

> "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

That statute gives the trial court the authority to divide all property of the parties. However, property acquired during the marriage, that is, "marital assets," are subject to the rebuttable presumption that "both spouses have contributed equally to the acquisition." Appreciation during the marriage of property brought into the marriage by one spouse is also a marital asset. *Massee and Massee*, 328 Or 195, 206, 970 P2d 1203 (1999).

In dividing the parties' property, we follow ORS 107.105(1)(f), as construed in *Kunze*, 337 Or at 134-36. Under that case, we undertake a series of inquiries, described by the Supreme Court:

> "If a party establishes that the property at issue is a marital asset * * *, then the court must apply the rebuttable presumption of equal contribution under ORS

107.105(1)(f) as its next step in the analysis.* * * [T]he presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets. When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties. * * *

"Because the presumption of equal contribution under ORS 107.105(1)(f) is rebuttable, either or both of the parties may seek to overcome it. If a party seeks to overcome that presumption, then that party has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. In assessing whether a party has satisfied that burden, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker. ORS 107.105(1)(f) (court shall consider contribution of spouse as homemaker). If a party ultimately rebuts the presumption that the other spouse contributed equally to a disputed marital asset, then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is 'just and proper in all the circumstances,' including the proven contributions of the parties to the asset. When a party has proved that a marital asset was acquired free of any contributions from the other spouse, however, this court has determined that, absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption.

"After the court makes its preliminary determination of the appropriate division of the marital assets by applying the statutory presumption, ORS 107.105(1)(f) next requires that the court consider what division of all the marital property—that is, both the marital assets and any other property that the parties had brought into the marriage—is 'just and proper in all the circumstances.' By contrast to the focus upon the parties' respective contributions under the statutory presumption, the court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of all the circumstances of the parties. * * * The trial court's ultimate determination as to what

property division is 'just and proper in all the circumstances' is a matter of discretion."

(Citations omitted.)

■ The court also clarified that the question whether the spouses have commingled separately held assets is part of the court's application of the "just and proper" inquiry and bears on the inquiry regarding comparative contribution to acquisition for purposes of rebutting the presumption of equal contribution only in circumstances in which assets have been so commingled as to render tracing impossible. *Kunze*, 337 Or at 142.

■■ It follows that our first task is to determine whether husband rebutted the presumption that wife equally contributed to the original acquisition of the inherited property. In *Tsukamaki and Tsukamaki*, 199 Or App 577, 583, 112 P3d 416 (2005), we stated the pertinent test this way:

"If one spouse can establish that the marital asset was acquired by gift and that the other spouse neither contributed to its acquisition nor was the object of the donative intent, then the statutory presumption is rebutted. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982); *see also id.* ('The presumption may be overcome * * * by a finding that property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse. In such a case, there has been no economic or other contribution by the other spouse to the acquisition of the asset.')."

According to wife, *Jenks* and the cases following it have established a two-pronged test for determining whether the presumption has been rebutted with respect to inherited or gifted property: (1) did the other spouse contribute to its acquisition, and (2) was the other spouse the object of the donative intent? In wife's view, the first inquiry authorizes a court to consider evidence that the other spouse did something to benefit the property before the gift or inheritance occurred, irrespective of whether that conduct influenced the inheritance or gift itself. Wife is mistaken as to the nature of the first inquiry. In order to show that a spouse contributed to the acquisition of inherited property, the contribution must have influenced the inheritance. *See Olesberg and Olesberg*, 206 Or App 496, 136 P3d 1202 (2006), *rev den*, 342

Or 633 (2007) (where husband's inheritance did not bear a direct relationship to past financial support that the parties provided to his parents, but was simply the result of an equal division of the mother's estate among her three children, husband and his two siblings, wife did not contribute financially to the acquisition of the inheritance). Here, wife has not shown that any work she performed in relation to the property influenced the making of the devise.

With respect to the second inquiry, the evidence showed that wife was not an object of husband's father's donative intent. Although, even at the time of the father's death, husband and his father had a strained relationship, the evidence showed that the father intended the property to belong to husband alone; the father even excluded from inheritance his several children apart from husband.[2] *Cf. Ahearn and Whittaker*, 200 Or App 29, 34, 113 P3d 439 (2005) (evidence that husband's parents' gift to husband was intended to replace property that he had received before marriage and was given without consideration to a sibling established that husband was sole object of his parents' intent). We conclude that wife did not influence the inheritance and, therefore, she did not contribute equally to the original acquisition of the property.

■ We next consider whether husband rebutted the presumption that wife equally contributed to the $135,000 appreciation in value of the property that occurred after the inheritance and during the course of the marriage. Husband argues that neither party contributed to the appreciation of the property because it was passive—that is, owing to general market appreciation and the growth of timber on the property. Husband relies on the principle that the presumption can be overcome by evidence that appreciation in separately owned property was passive, involving no contribution by either spouse. *See Kunze*, 337 Or at 143. We agree with wife that the principle on which husband relies is inapplicable to the circumstances of this case. As discussed, in assessing whether a party has satisfied the burden of rebutting the

---

[2] It is unnecessary to belabor the issue in detail; suffice it to say that husband's father was an adherent of the antiquated property descent custom of primogeniture.

presumption, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker. *Kunze*, 337 Or at 135. In this case, wife, the nonowner spouse, was the primary caretaker of the parties' young children. In *Owens-Koenig and Koenig*, 194 Or App 573, 578, 95 P3d 1152 (2004), *modified on recons*, 195 Or App 734, 98 P3d 1143 (2004), we observed that, when

> "[o]ne spouse holds assets separately, and the other makes a disproportionately greater nonfinancial contribution to the marital estate through homemaking, child care, or some other form of undercompensated service * * * the courts have held that the presumption of equal contribution is not overcome with respect to the spouse whose contribution is at least partly indirect and nonfinancial. In so holding, the courts have given effect to the legislature's intention in creating the presumption."

That is the circumstance here. In addition, wife contributed her earned income to the family. Moreover, even though the effect on the value of the property was not quantified, both parties made substantial contributions of labor to the property during the marriage. We conclude that wife's uncompensated contributions as a caregiver for the parties' children, and her other economic and noneconomic contributions to the marriage and the property itself, have preserved, in the face of husband's challenge, the presumption that she contributed equally to that appreciation. *See also Niman and Niman*, 206 Or App 259, 267-68, 136 P3d 105 (2006) (even though neither party made substantial, targeted contribution to marital appreciation in subject property, wife's uncompensated contributions as homemaker and caregiver for parties' children preserved presumption that she contributed equally to that appreciation).

■■ However, our conclusions that husband rebutted the presumption with respect to the original inheritance and failed to do so with respect to the appreciation in value of the inherited property during the marriage do not end the analysis. We must still determine how to apportion the property in a manner that is "just and proper in all the circumstances."

ORS 107.105(1)(f); *Kunze*, 337 Or at 145. In doing so, we consider, in addition to the parties' relative contribution, a number of other factors. *Id.* at 134-35. Most significantly for purposes of this case, we examine "the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." *Id.* at 136. Commingling, in turn, depends to a large extent on intent, that is, on "whether a spouse had intended to retain the separately acquired asset as separate property or whether, instead, that spouse's treatment of the separately acquired asset demonstrated an intent for that asset to become a joint asset of the marital partnership." *Id.* at 141. Intent, then, depends not on what a spouse might privately contemplate or even publicly declare; it depends on how a spouse acts, that is, on what the spouse's "treatment" of the asset "demonstrate[s]." *Lind and Lind*, 207 Or App 56, 67, 139 P3d 1032 (2006). In determining the spouse's intent, we can consider multiple factors, including "(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset." *Kunze*, 337 Or at 141. Finally,

> "[b]ecause it is an equitable consideration, commingling is not an all or nothing proposition. Instead, commingling falls along a spectrum. In some cases, a particular asset may be commingled to such an extent that it would be inequitable to divide it in any manner other than equally. In other cases, an asset may be less commingled and therefore subject to a split into unequal shares. *See, e.g., Taylor and Taylor*, 121 Or App 635, 640, 856 P2d 325, *adh'd to as modified on recons*, 124 Or App 581, 863 P2d 473 (1993), *rev den*, 319 Or 626 (1994) (awarding wife one third of husband's inheritance because it was commingled through wife's reliance on it as a source of retirement income)."

*Tsukamaki*, 199 Or App at 586.

 Here, the evidence pertaining to commingling runs at cross-currents. In some respects, commingling of the inherited property was limited. For example, husband placed title to the property in his own name after the settlement of

his father's estate, and there is no evidence that wife exercised any particular control over it. In addition, unlike in several cases where substantial commingling justified an equal division of the disputed asset, here the parties did not reside on the property or otherwise occupy or intensively develop it. *Cf. Kunze,* 337 Or at 142; *Uwimana and Rwangano,* 209 Or App 693, 698, 149 P3d 257 (2006); *Lind,* 207 Or App at 67-68; *Niman,* 206 Or App at 268-70; *Winkler and Winkler,* 200 Or App 524, 533-34, 115 P3d 948, *rev den,* 300 Or 475 (2005); *Van Horn and Van Horn,* 185 Or App 88, 93, 57 P3d 921 (2002), *rev den,* 335 Or 267 (2003).

On the other hand, as discussed, after husband's father died, the parties intermingled the property with their personal financial affairs, they performed substantial cleanup and garbage removal work on the property, wife actively investigated whether the property might be eligible for a Ballot Measure 37 claim, she assisted in various other activities on the property such as fence building and removal of brush, and the parties resumed using the property as a private recreational area. That evidence indicated that husband intended, at least to some extent, to rely on the property as a joint asset. In sum, the evidence of commingling in this case settles somewhere in the middle of the spectrum, thus suggesting that some portion of the original inherited value of the property, but not half, should be allocated to wife.

█ Beyond evidence pertaining to commingling, the parties also point to other equitable considerations that might apply to the determination of a just and proper division of the property. Wife observes that her income is lower than husband's, she did not receive a spousal support award, and she has custody of the minor children and is primarily responsible for their welfare. Similar factors played a role in our decision to equally divide the appreciation in value of a family residence in *Niman,* even though the husband had acquired the property before the marriage. *See Niman,* 206 Or App at 267-68; *see also Seefeld and Seefeld,* 294 Or 345, 350-51, 657 P2d 201 (1982); *Jenks,* 294 Or at 243. However, unlike in *Seefeld, Jenks,* and *Niman,* the property here was not the parties' marital residence; rather, wife was awarded the marital residence. Moreover, wife has a profession and an advanced educational degree that she earned during the

marriage, which, together with the child support award and her retirement benefits, should make her economically self-sufficient. Accordingly, we conclude that, apart from the issue of commingling, other equitable considerations do not preponderate in favor of awarding a portion of the inherited value of the property to wife.

On balance, we conclude that a just and equitable division of the inherited property calls for an equal division of the marital appreciation, and an award to wife of 25 percent of the value of the property when husband inherited it. Based on that formula, wife is entitled to receive $150,000 in equity from the property, and husband shall receive $315,000. In order to effectuate that modified award, we will not disturb any portion of the trial court's property division other than to reduce the equalizing judgment from $155,000 to $95,430.[3] Because the property is important to husband, the reduction in the amount of the judgment may permit him to obtain financing to pay the judgment and, thus, avoid the need to sell the property. For that reason, in calculating the judgment, we have not reduced the value of the property by its projected costs of sale.

Before concluding, we pause to reflect on the reason why this case, among others in which we review *de novo* a trial court's division of marital property, has generated an extended appellate opinion and a recalibration of the trial court's decision. Our reason inheres in the nature of our appellate review of such decisions. Although we review the evidence *de novo*, we review the award itself for the proper exercise of discretion. *See Kunze*, 337 Or at 136 (holding that the ultimate determination of what is just and proper is discretionary). "This jurisprudential approach serves both as an invitation to principled arguments and a statement of self-restraint in favor of stability." *Gardner and Gardner*, 212 Or

---

[3] We arrive at that calculation as follows: The inherited property and the parties' residence had a combined value of $574,136. Wife is entitled to one-half of the equity in the residence ($54,568), plus one-half of the appreciated value of the inherited property ($67,500), plus one-quarter of the value of the inherited property at the time of inheritance ($82,500), for a total real property interest of $204,568. The trial court valued wife's real property interest at $264,138. The difference, $59,570, is the amount by which we have reduced the equalizing judgment from $155,000 to $95,430.

App 148, 157, 157 P3d 320 (2007). When a trial court makes a discretionary decision, the record must reflect a proper exercise of that discretion. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (holding that a trial court errs as a matter of law if it "fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion"). Although the court's explanation need not be lengthy or complex, it must comport with the applicable legal framework and describe the basic reasons for the decision. *See McCarthy v. Oregon Freeze-Dry, Inc.*, 327 Or 185, 188, 957 P2d 1200 (1998) (court must exercise its discretion according to relevant legal criteria); *Antunez v. Lampert*, 169 Or App 196, 200, 7 P3d 735 (2000), *rev den*, 331 Or 583 (2001) (Wollheim, J., concurring) (to properly reflect the exercise of discretion, "the trial court's consideration need not be lengthy or complex, but it must indicate why the trial court took the action it took").

In this case, we have no quarrel with the facts that the trial court found, as far as they went. However, our attention was drawn to the trial court's understanding of its task. Although the court recognized the existence of the presumption of equal contribution, the court did not appear to follow the methodology prescribed in *Kunze*. Instead, the court appeared to focus solely on its view of what was equitable based on its findings with respect to commingling.[4]

---

[4] The trial court expressed the following view:

"I find that on balance there has been—I think there are two ways to look at it. One is what presumption is there, and, if so, whose obligation is it to overcome it.

"Now there is as the counsel—as counsel know, a practically endless line of cases involving inheritances. And as is always the case with something that is so individual and unique from one case to another, you can take—you can always find some earlier case that—where you focus on certain of the facts and then rely on some of the argumentative comments of the Court of Appeals, you can justify about any result you like.

"And so in my view of it is I just have to make the best assessment I can of whether the equities and what's appropriate seem to flow in one direction or the other, even though I know you can always point to contradictory items that, if believed to be compelling, could take you in a different direction."

Although we share the trial court's skeptical view of slavish "fact matching," it does not follow that the exercise of discretion in such cases is essentially standardless.

To be sure, a trial court may engage in a truncated analysis that could lead to an award lying within the range of its discretion. We nonetheless examine the trial court's decision based on the pertinent statutory and equitable considerations. In order to earn the measure of deference to which discretionary decisions are entitled on appeal, a trial court's property award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes. If a decision fails in the former respect, our own analysis may produce a recalibrated, even if not dramatically different, award on appeal. That is the circumstance here.

Judgment modified to reduce amount of equalizing judgment in favor of wife to $95,430; otherwise affirmed.