Argued and submitted January 11, judgment modified to award wife an
equalizing judgment of $541,906; otherwise affirmed December 14, 2011

In the Matter of the Marriage of

Adele Janice HANSCAM,
*Petitioner-Appellant,*

*and*

Casey HANSCAM,
*Third-Party Plaintiff,*

*and*

Steve Eugene HANSCAM,
*Respondent-Respondent.*

Linn County Circuit Court
070754; A142420

268 P3d 715

Edward L. Daniels argued the cause for appellant. With him on the briefs was Law Office of Daniels & Ivers.

Gilbert B. Feibleman argued the cause for respondent. With him on the brief was Feibleman & Case, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Wife appeals from a general judgment dissolving the parties' marriage. She challenges the trial court's division of the parties' property, in particular, a rental house (the Cedar Street property); husband's accounting practice (the CPA practice); husband's interest in a family partnership, Hanscam Properties Limited Partnership (HPLP); and a 1972 Porsche car. She argues that the court erred in (1) awarding husband his premarital interest in the Cedar Street property as his separate property; (2) calculating the value of the CPA practice and awarding husband his premarital interest in that asset as his separate property; (3) awarding husband his interest in HPLP as his separate property; and (4) awarding husband the total value of the Porsche. For the reasons explained below, 247 Or App at 219, we exercise our discretion to review this case *de novo*.[1] On *de novo* review, we conclude that the trial court erred in its division of the Cedar Street property, the CPA practice, and the Porsche. We modify the judgment accordingly and otherwise affirm.

The parties met in 1984, began living together later that year, and were married in April 1989. They separated in 2007, and a judgment of dissolution was entered in June 2009, after 20 years of marriage. At the time, wife was 42 years old, husband was 54, and the parties' two children were ages 19 and 16.

When the parties met, wife had just graduated from high school and was working as a waitress. Husband had been working as an accountant in his father's practice for several years. He owned a home—the Cedar Street property—

---

[1] Wife asserts, incorrectly, that *de novo* review is required in this case, citing ORS 19.415. However, that statute was amended in 2009 to provide that *de novo* review in these types of cases is discretionary with the court; those amendments apply to appeals, such as this one, in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, §§ 2-3. ORS 19.415(3) now provides:

"Upon an appeal in an equitable action or proceeding, review by the Court of Appeals shall be as follows:

"* * * * *

"(b) Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."

which he had purchased in 1980 for $36,500. Wife moved into the Cedar Street property in September 1984, and, with the exception of a nine-month period when wife lived in Portland to attend school, the parties lived there together until they were married in April 1989. Around the time the parties began living together, husband became a certified public accountant (CPA) and was gifted a 25 percent interest in his father's CPA practice. In 1986, wife began attending community college. She first attended Linn-Benton Community College; later she went to Portland Community College. She completed her studies and received her license as a radiology technician in 1991.

Sometime before the parties were married in 1989, husband purchased the Coulter Lane property, an approximately 15-acre farm, which became the parties' marital residence.[2] The Cedar Street property, meanwhile, became a rental, and it remained a rental throughout the parties' marriage. Husband continued to hold title to the Cedar Street property in his name alone, but rental payments from the property were deposited into an account held jointly by husband and wife. The parties used the money from that account for maintenance and improvements to the property and to purchase other rental properties.[3]

Husband worked as a CPA throughout the marriage and was the primary income earner for the family.[4] Most of the year husband worked approximately 40 hours per week; during tax season, from approximately January 1 through April 15, he worked an average of 60 to 65 hours per week. In 1989, shortly before the parties married, husband's father retired and husband agreed to purchase the remaining 75 percent interest in the CPA practice; that interest was paid for over the course of the parties' marriage. Husband testified that he had no intention to discontinue working as a CPA.

---

[2] The court divided the value of that property equally between the parties; that division is not at issue on appeal.

[3] In addition to the Cedar Street property, the parties owned two other rental properties at the time of dissolution. The trial court's division of those properties is not at issue on appeal.

[4] At the time of the dissolution trial, husband's gross income from the CPA practice was estimated at approximately $11,000 per month.

Wife was primarily responsible for taking care of the Coulter Lane house and property and, after the parties' children were born, taking care of them. At times, the parties raised cattle or used part of their property as a tree farm, and wife helped in those endeavors. In addition, from 1991 until 1998, wife worked approximately 20 hours per week as a radiology technician. In 1998, the parties agreed that wife would quit working altogether in order to take over management of their property rental business and help run the CPA office, in addition to her responsibilities for caring for the Coulter Lane home and property and the children.[5]

Wife's involvement in running the CPA office was minimal. She cleaned the office on the weekends and purchased office supplies. She also, at least on one occasion, painted the inside of the office. As the parties' children got older, cleaning the office became their job; wife supervised them and also cleaned and maintained the parking lot. She was paid by the CPA practice for those tasks.[6]

Wife's responsibility for managing the parties' rental property, including the Cedar Street property, was more significant. Wife kept the Cedar Street property rented and performed regular maintenance work. She also made improvements to the property, such as new windows, new heaters, a garage door, and some electrical work. She hired out "a couple jobs" but did most of the work herself. The Cedar Street property always maintained a positive cash flow—that is, the cost of maintenance and improvements were never more than the rental income. Wife testified that the parties kept their rental properties for investment purposes and planned to use them as financial resources for their retirement.

When the parties first met, husband held a 16 percent interest in a family partnership that had been formed by

---

[5] There was some disagreement between the parties over when wife would return to outside work; apparently, wife decided that she would not go back to work until their youngest child turned 16 although husband encouraged her to do so earlier. As the trial court found, and we agree, wife could not have worked full time and maintained her other responsibilities. Wife was unemployed at the time of the dissolution; the trial court estimated that she could earn $4,936 per month as a full-time radiology technician.

[6] Although the record is not entirely clear, it appears that wife may have been paid $300 per month for the cleaning.

husband's parents in the 1970s to hold real property for purposes of their retirement. In 1999, that partnership was converted to HPLP for tax and estate-planning purposes. Husband received an additional five percent interest in HPLP in 1999 and again in 2000 as gifts from his parents so that, at the time of dissolution, husband owned a 26.38 percent interest in HPLP. Husband's father testified that the gifts were intended to benefit husband only and that it was not his or his wife's intent to transfer any interest in HPLP to any of their children's spouses.

HPLP owns several rental properties and parking lots. The other partners are husband's father, his mother's estate, and his two sisters. Husband's father is the controlling general partner, and he receives all of HPLP's after-tax income as his salary. Husband and wife have never received any income from HPLP except as reimbursement for their payment of taxes associated with the partnership's profits. As to the parties' involvement in HPLP, from 2000 to 2006, wife acted as a rental manager for one of HPLP's properties, a beach cottage in Yachats. She did so without compensation at first but, after a brief period of time, was given a percentage of the rental income from the property as payment for that work. Wife also performed some maintenance and repair work on one of HPLP's other properties; she was paid for that work as well. In addition, husband's CPA office was located on a property held by HPLP. As noted, wife was responsible for cleaning that office and maintaining its parking lot (and was paid by the CPA office for doing so). Other than those efforts, the record does not disclose any further involvement by either party in HPLP.

When the parties met, husband also owned a 1972 Porsche car, which he had purchased for $7,250. During the marriage, husband used $4,500 in marital funds to make improvements to the car, and it was valued at $14,000 at the time of dissolution. Wife testified that she drove the 1972 Porsche once during the marriage.

At trial, wife requested that all of the parties' property be divided equally. Husband requested that his premarital equity in the Cedar Street property, his premarital 25 percent interest in the CPA practice, his interest in HPLP,

and the full value of the 1972 Porsche be awarded to him as his separate property.

Each party presented expert testimony as to the value of the CPA practice using various standard methodologies. Wife's expert, Mason, provided valuations under the income ($409,000), market ($439,000; $442,000), and adjusted net asset ($154,000) approaches but, ultimately, relying primarily on the market approach and adding in his personal "real world" experience, arrived at a fair market value for the practice of $439,000. Mason's appraisal process did not include an on-site assessment of the premises. Mason opined that the market approach is generally the most objective but acknowledged that it had "significant drawbacks" in calculating the value of the CPA practice because there was no "history of the comparable businesses prior to the year of sale" and little or no information about "the individual market area, services provided, market or clientele niche, client mix, or any other specific company risk factors."

One of the issues both experts confronted was the valuation of the goodwill associated with the practice. Mason's valuation did not distinguish between personal and enterprise goodwill, although Mason testified that personal goodwill was "factored out" in his ultimate market-based valuation. He acknowledged, however, that that valuation was premised on husband executing a noncompetition covenant.

Husband's expert, Allen, likewise offered income ($313,000) and net asset ($202,000) valuations. Allen's appraisal included a visual tour of the facility, which, he testified, was a "very standard practice." He stated that he was unable to calculate a value based on a market analysis because the transaction databases for sales of CPA practices provided insufficient information for him to be confident that the businesses sold were indeed comparable to husband's practice. For example, Allen opined, he was unable to identify from the transaction databases sales that had occurred in locations with populations, like Sweet Home, of less than 10,000 people and low household incomes. According to Allen, household income is a "key factor" in comparing CPA practices.

On the subject of goodwill, Allen indicated that any market value arrived at "over and above the value of the hard assets" of a business was goodwill value and that it was "very important" to distinguish between personal and enterprise goodwill because, under Oregon law, the former is not a divisible marital asset but the latter is. In his opinion, all of the goodwill associated with husband's CPA practice was personal goodwill. He also opined that, "because of the need to have a non-compete agreement and the owner having to transition clients in order to transfer that goodwill, that any value of—any market base[d] approach in excess of an income approach would be purely [personal] goodwill." Ultimately, Allen recommended using a fair market value of $202,000 based on the asset approach.

The trial court was more persuaded by husband's expert's appraisal, observing:

> "The Court was not impressed with the thoroughness of Mr. Mason as compared to the thoroughness of Mr. Allen. While a site visit to the business may not be essential, it seems to have been of value in this case and is additional evidence of the thorough approach taken by Mr. Allen. Mr. Allen in his opinion used less subjective criteria in his assessment whereas Mr. Mason used more subjective criteria. The more subjective the criteria, the more speculative it is and the less reliable as viewed by the Court."

The court concluded that it was appropriate to exclude personal goodwill from the valuation of husband's practice; however, it rejected the idea, embodied in Allen's proposed asset-based approach, that goodwill in its entirety must be ignored. Ultimately, the court assessed the value of the practice at $313,000 ($55,000 of which was husband's premarital ownership interest in the practice), which was consistent with Allen's income-based approach.

In dividing the parties' property, the trial court credited husband with his premarital interest in the Cedar Street property and in the CPA practice and divided the appreciation in both properties that accrued during the marriage equally between the parties. The court also equally divided the 75 percent interest in the CPA practice that husband had

acquired during the marriage. The court awarded husband the totality of his interest in HPLP and the value of the 1972 Porsche as his separate property.[7]

On appeal, wife challenges the trial court's disposition of those four assets. In particular, she argues that the court erred in (1) awarding husband the premarital equity in the Cedar Street property ($36,500); (2) undervaluing the CPA practice and awarding husband his premarital interest ($55,000) in that property; (3) awarding husband the value of the interest that he had acquired in HPLP both before and during the marriage ($161,400); (4) awarding husband the value of the 1972 Porsche ($14,000), including the appreciation in value of that asset during the marriage ($6,750).

Before considering each of those arguments, we set out the relevant legal principles. Property division at dissolution is governed by ORS 107.105(1)(f), which provides, in part:

> "Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:
>
> "* * * * *
>
> "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. * * *."

Thus, under ORS 107.105(1)(f), assets acquired during the marriage are marital assets, to which the presumption of equal contribution applies. *Kunze and Kunze*, 337 Or 122,

---

[7] The value of the parties' remaining assets, including the marital residence and the other rental properties, was divided equally between husband and wife. Because husband received more of the real property—specifically, the marital residence, the Cedar Street property, and one of the other rentals—than wife did (wife received one of the rentals), wife was awarded an equalizing judgment of $492,781. Wife was also awarded custody of the parties' minor child, child support, and transitional spousal support of $1,000 per month for four months.

133, 92 P3d 100 (2004). Accordingly, when applying ORS 107.105(1)(f), we first determine when the disputed asset was acquired. If the asset was acquired during the marriage, we apply the statutory presumption, unless either party has rebutted it. *Kunze*, 337 Or at 134. If the presumption of equal contribution is effectively rebutted,

> "then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is 'just and proper in all the circumstances,' including the proven contributions of the parties to the asset. *Massee* [*and Massee*, 328 Or 195, 205, 970 P2d 1203 (1999)]."

*Id.* at 135.

Property acquired by gift or inheritance during the marriage is a marital asset, however, "[t]he presumption [of equal contribution] may be overcome * * * by a finding that property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse." *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982); *see Finear and Finear*, 240 Or App 755, 762, 247 P3d 1238, *rev allowed*, 350 Or 716 (2011) (where there was no evidence that the wife made any contribution or had any influence over the acquisition of assets that the husband had inherited during the marriage the presumption was overcome). When the statutory presumption is rebutted, "absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Kunze*, 337 Or at 135; *see also Finear*, 240 Or App at 763-64.

Assets acquired before marriage are not "marital assets" and, therefore, are not subject to the presumption of equal contribution. However, those assets are nonetheless considered marital property; as such, they are also subject to a division that is "just and proper in all the circumstances." ORS 107.105(1)(f); *Kunze*, 337 Or at 139. The "just and proper" inquiry focuses less upon the parties' respective contributions to the asset and more on equitable considerations, including such factors as "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the

marital partnership through commingling." *Id.* at 135-36 (internal citations omitted). Commingling can justify division of a separately acquired asset "when a spouse has so integrated a separately acquired asset into the joint finances of the marital partnership that it would be inequitable to award the asset to that spouse as separate property under a 'just and proper' distribution of the parties' marital property."[8] *Rudder and Rudder*, 230 Or App 437, 459, 217 P3d 183, *rev den*, 347 Or 365 (2009) (citing *Kunze*, 337 Or at 142); *see also* ORS 107.105(1)(f). That determination, in turn, is largely dependent on intent, that is, on

> "whether the spouse 'demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate.' *Kunze*, 337 Or at 142. That is so because, 'when a spouse has treated a separately acquired asset as a joint asset of the marital partnership, then the parties' shared financial decisions during the marriage have been made in reliance of that asset without consideration to whether it was separately or jointly acquired.' *Id.* at 140; *Lind and Lind*, 207 Or App 56, 67, 139 P3d 1032 (2006) ('Intent * * * depends not on what a spouse might privately contemplate or even publicly declare; it depends on how a spouse *acts*, that is, on what the spouse's "treatment" of the asset "demonstrate[s]." ' (Emphasis and brackets in original.))."

*Rudder*, 230 Or App at 459-60 (omission in *Rudder*). Among the factors we consider in assessing intent are "(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset." *Kunze*, 337 Or at 141.

Ultimately, the trial court's "determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion." *Id.* at 136. We examine the

---

[8] Commingling can also affect the proper division of a separately acquired asset if the asset "has been so commingled with the joint assets of the marriage that the court is precluded from identifying the source of the disputed asset 'with sufficient reliability to rebut the statutory presumption that both spouses have contributed equally to the disputed asset.' " *Rudder and Rudder*, 230 Or App 437, 459, 217 P3d 183, *rev den*, 347 Or 365 (2009) (quoting *Kunze*, 337 Or at 138). That is not the issue in this case.

trial court's decision based on the pertinent statutory and equitable considerations that ORS 107.105(1)(f) requires, and we will not disturb the trial court's award unless we conclude that the court misapplied those factors. *Id.* (citing *Haguewood and Haguewood*, 292 Or 197, 199-204, 638 P2d 1135 (1981)); *see also Grossman and Grossman*, 338 Or 99, 107, 106 P3d 618 (2005) ("[I]n many cases a range of possible property divisions likely would be just and proper[.]"). In other words, to be entitled to deference on appeal, "a trial court's property award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes." *Olson and Olson*, 218 Or App 1, 16, 178 P3d 272 (2008).

With that framework in mind, we return to wife's arguments. As noted, wife's only dispute regarding the division of both the Cedar Street property and husband's CPA practice is as to the premarital value of those properties.[9] The parties agree that those values are not marital assets because they were acquired by husband before the marriage; therefore, the question reduces to whether it was within the permissible range of the court's discretion under a "just and proper" analysis to award them to husband. That, in turn, depends primarily on commingling and other equitable considerations. As just explained, the focus is on husband's demonstrated intent, specifically, whether husband's actions reflect an intent to retain his interest in the property separately or to have it become the "joint property of the marital estate." *Kunze*, 337 Or at 142.

We begin with the Cedar Street property. Wife challenges the trial court's express factual finding that "[w]ife did not contribute anything to the acquisition, maintenance or improvement of Cedar Street at any time before or during the marriage," arguing that the evidence is to the contrary. We agree that the court's finding on wife's contribution (or lack thereof) to the Cedar Street property does not comport with the uncontroverted evidence in the record. Although the record reflects that wife did not contribute *financially* to the

---

[9] As mentioned, the appreciation in value of the properties during the marriage, as well as the portion of the CPA practice that husband purchased during the marriage, were treated as marital assets and divided equally between the parties; that division is not challenged on appeal.

property either before or during the marriage, as wife points out, the undisputed evidence establishes that wife performed regular maintenance work on the property, made some improvements to it (either herself or by hiring the jobs out), and was responsible for managing it as a rental during the parties' marriage. Thus, the trial court's finding cannot be reconciled with the evidence in the record; for that reason, we exercise our discretion to review *de novo*. *See* ORAP 5.40(8)(d)(ii) ("[w]hether the trial court's decision comports * * * with uncontroverted evidence in the record" is a relevant consideration in our decision to exercise discretion under ORS 19.415(3)); *Frost and Frost*, 244 Or App 16, 22, 260 P3d 570 (2011) (applying ORAP 5.40(8)(d)(ii) in exercising discretion to review *de novo*). In doing so, we make the alternate finding above—*viz.*, that wife contributed to the Cedar Street property during the marriage through her labor in maintaining, improving, and managing the property.

Wife also argues that the court misapplied the statutory and equitable considerations under ORS 107.105(1)(f) because the Cedar Street property was entirely integrated into the common financial affairs of the parties, the rental income from the property was used for "the good of the family," and the asset was part of their retirement plan. She contends that, although title to the property was in husband's name, husband "was most willing to allow [w]ife to live there before they were married and to have [w]ife totally manage and make repairs to the rental after they moved[.]"

In response, husband argues that he demonstrated his intent to keep the Cedar Street property separate in that he never added wife's name to the title and the rental income was placed into a separate bank account. He also contends that, because the property was debt free, it was self-supporting, and that wife "did not greatly contribute to [its] maintenance or improvement." In any event, husband argues, wife has already been "over-compensated" for her minimal contribution in that the appreciation of the property was equally divided between the parties.

The trial court found, and we agree, that (1) husband owned the Cedar Street property outright before the parties were married; (2) the parties lived on the property for just a

few years and never during the marriage; (3) because all repairs and improvements to the property were paid for from rental income, the marital estate did not contribute to the property; and (4) unlike other property acquired by husband before the marriage, the property has been held separately in husband's name throughout the course of the marriage.

Those findings lend some support to husband's argument that he did not intend to commingle the Cedar Street property. First, the title remained in husband's name only. *See Kunze*, 337 Or at 141-42 (how property is held—whether jointly or separately—is relevant to whether the spouse intended to retain the property as his or her separate property or make it a joint asset); *Olson*, 218 Or App at 12-13 (that the husband placed the title of inherited property in his own name suggested limited commingling). Next, the property was never used as the parties' marital home. *See id.* at 13 ("[U]nlike in several cases where substantial commingling justified an equal division of the disputed asset, here the parties did not reside on the property or otherwise occupy or intensely develop it[.]"); *Lind and Lind*, 207 Or App 56, 68, 139 P3d 1032 (2006) (as the Supreme Court indicated in *Kunze*, and this court has since reinforced, the "use of a separately acquired house as a family home is powerful evidence (although certainly not dispositive) of commingling"). Finally, no marital funds were used to acquire, maintain, or improve the property. *Cf. Rudder*, 230 Or App at 461 (the husband's use of marital funds to pay mortgage on the property indicated intent to make that separately acquired property a joint marital asset); *Lind*, 207 Or App at 68 (payment of mortgage on the property from the husband's employment income—itself a marital asset—factored in favor of equally dividing the husband's premarital investment in the property under "just and proper" analysis).

However, other considerations also bear on the question of intent, namely, "whether the parties shared control over the disputed property" and "the degree of reliance upon the disputed property as a joint asset." *Kunze*, 337 Or at 141. Those factors weigh strongly in favor of wife's argument that husband intended to commingle the asset with the parties' joint property. *See Tsukamaki and Tsukamaki*, 199 Or App

577, 585, 112 P3d 416 (2005) ("The various factors are alternative methods by which assets can become commingled. For example, commingling can occur through joint titling, through shared control, or through reliance on a separately titled property as a joint asset."). It is undisputed that rental money from the Cedar Street property was directed into a joint bank account from which the parties financed, in addition to repairs and improvements on the Cedar Street property, the purchase of other rental properties. Moreover, the parties intended to use the rental properties for their retirement. Thus, much like when premarital property is used as a marital home, the Cedar Street property in this case appears to have been fully committed to family uses. *See Finear*, 240 Or App at 766 (the husband's use of his separately acquired inheritance/trust funds for family purposes constituted evidence of commingling under a "just and proper" analysis); *Lind*, 207 Or App at 67-68 (key to intent is how a spouse *acts* with respect to separately acquired asset, such as when " 'a spouse who owned separate property commits it to family uses, as when a house brought into the marriage becomes the family home' " (quoting Leslie Joan Harris, *Tracing, Spousal Gifts, and Rebuttable Presumptions: Puzzles of Oregon Property Distribution Law*, 83 Or L Rev 1291, 1300 (2004))). In addition, wife exercised a significant degree of control over the Cedar Street property—it was wife who managed the property as a rental and, in that capacity, either performed repairs and improvements to the property herself or arranged to have them completed by others. In our view, it is that factor—which the trial court misapprehended—that tips the balance.

It is also what distinguishes this case from the Supreme Court's disposition of a similar property in *Kunze*. In *Kunze*, the wife came into the marriage with several parcels of real property, including the "Germantown Road property." 337 Or at 125. A few years into the marriage, the wife inherited substantial additional real property assets. *Id.* During the course of the parties' long marriage, several of those assets were sold or converted into other assets. For example, and as pertinent to this discussion, the wife inherited a duplex in California, which she later sold. She then

used a portion of those funds ($170,000) to purchase a four-plex—the "Chaps Court property." *Id*. at 127. On appeal, the Supreme Court considered, *inter alia*, whether it was "just and proper" under commingling principles for the parties to divide equally the premarital portion of the Germantown Road property and the wife's $170,000 equity in the Chaps Court property. *Id*. at 142-43.[10] The court, on *de novo* review, chose not to disturb the trial court's ruling that the wife was entitled to the premarital portion of the Germantown Road property as her separate property, but concluded that the court had erred in separately awarding the wife the value of her contribution to the Chaps Court property. *Id*. at 146-47. In arriving at the former conclusion, the court noted that (1) the husband was added to the title of the property only late in the marriage and only for the purposes of securing financing for another project; (2) it was not used as the marital home, except for a few years at the beginning of the marriage; and (3) although the husband, who was trained in construction, had contributed his labor to the property, including repairs and improvements, he had "received the benefit of that contribution from the division of the appreciation of that property that had accrued during the marriage." *Id*. at 146. With regard to the Chaps Court property, on the other hand, the court noted that the wife had purchased it jointly with her husband and that, unlike with the Germantown Road property, she had not introduced evidence demonstrating her intent to retain her separately acquired equity in that property as her separate property. *Id*. at 146-47.

There are some obvious parallels to be drawn between the Germantown Road property in *Kunze* and the Cedar Street property at issue in the present dispute. Indeed, in this case, husband never added wife's name to the title of the Cedar Street property, nor did the parties ever use it as their marital residence. Moreover, as with the Germantown Road property in *Kunze*, wife has received an equal share of the appreciation of the property that accrued during the marriage. However, in *Kunze*, unlike in this case, there is no

---

[10] Although the latter was a jointly titled marital asset, the Supreme Court found that the wife had successfully rebutted the presumption that the husband had contributed equally to the disputed equity in that property, which had originated solely from her separate funds. 337 Or at 144-45.

suggestion that the husband exercised significant control over the Germantown Road property or had any role in its management. Here, by contrast, wife exercised significant control over the Cedar Street property, managing its rentals and performing and arranging for its repairs and improvements throughout the length of the marriage. It is also apparent that husband and wife made joint financial decisions with respect to the property—such as using the rental income to purchase other rental properties—without regard to whether it was separately or jointly titled. It is those actions—absent from the record in *Kunze*—that demonstrate husband's intent to commingle the Cedar Street property with the parties' joint property, such that "it would be inequitable to award [it] to [husband] as separate property." *Rudder*, 230 Or App at 459.

For similar reasons, we also conclude that wife is entitled, under a just and proper analysis, to share equally in the premarital portion of husband's CPA practice—that is, the 25 percent interest that husband was gifted by his father before the marriage. In her argument respecting that property, wife asserts that the trial court failed to follow the methodology of *Kunze* in awarding husband his premarital interest in the practice; she further contends that a proper application of the methodology results in an equal division of the asset. Husband disagrees, arguing that, although not explicit, the court properly followed *Kunze* and that, because the CPA practice "has always remained separate and wife did little to contribute to its success," the court acted within its discretion in awarding the premarital value to husband. Husband also points out that wife shared in husband's income from the CPA practice throughout the marriage and was awarded half of the value of the 75 percent portion acquired during the marriage and half of the appreciation that accrued during the marriage. Thus, in husband's view, it was just and proper to award the premarital portion solely to husband.

We agree with wife on both points. First, the trial court found that

"[w]ife's contribution to the premarital ownership of [h]usband in the CPA practice is zero. It is therefore equitable, based upon all considerations, that [h]usband receive

the premarital ownership interest in the professional practice known as Steve Hanscam, CPA without consideration in the overall property division in this case."

Thus, it does not appear that the trial court considered and applied the methodology prescribed in *Kunze*—in particular, whether husband's treatment of the separately acquired asset demonstrated his *intent* for that asset to become a joint asset of the marital partnership. Instead, the court appears to have focused solely on wife's lack of *contribution* to the premarital portion of the asset in determining that it was equitable to award it solely to husband. As we held in *Olson*,

"[i]n order to earn the measure of deference to which discretionary decisions are entitled on appeal, a trial court's property award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes. If a decision fails in the former respect, our own analysis may produce a recalibrated, even if not dramatically different, award on appeal."

218 Or App at 16.

Second, we agree with wife that, under the correct methodology, it is just and proper that she share in the premarital value of the CPA practice. Although the practice was held solely in husband's name, and he managed it with little or no input from wife,[11] as previously discussed, "the degree of reliance on the disputed property as a joint asset" of the marriage is also a relevant factor in determining whether a spouse has demonstrated an intent to commingle the asset. *Kunze*, 337 Or at 141-42. It is that factor that militates decisively in wife's favor. Husband and wife were married for 18 years before they separated. During that time, wife took care of the children, the household chores, the rental properties, and, to some degree, the farm, so that husband could focus on working and building the CPA practice. We agree with the trial court's finding that, between 1998 and 2007, "wife did not work anywhere because the parties agreed that she would take over the rental business management, [husband's] office work and taking care of the children and the

---

[11] As noted, wife did participate to some extent in its operation (*e.g.*, cleaning and buying supplies).

home." Between January 1 and April 15 of every year, husband worked long hours in the CPA practice; wife's efforts in taking care of the children, the home, and the rental properties made that possible.

Moreover, it is undisputed that the parties relied on the CPA practice as the primary source of the family's income. On that point, *Finear* is instructive. In *Finear*, the husband inherited substantial assets during the marriage, established a trust with those assets, and used inheritance/ trust funds to purchase other property, including the "Lomas Road property," which eventually became the parties' residence. 240 Or App at 758. With the exception of a small monthly allowance that the husband gave the wife for her personal needs, the husband maintained separate ownership and control over all of the inheritance/trust property and made all of the financial decisions for the couple. *Id.* at 765. He also expressed his intention to keep the inherited/trust fund property separate. We concluded that the husband had rebutted the presumption of equal contribution with respect to the inheritance.[12] *Id.* at 762. Nonetheless, in conducting the just and proper analysis, we found that there were some cognizable aspects of commingling. Emphasizing, again, that how a spouse *acts* with respect to the asset is determinative of the spouse's intent to commingle, we noted that the husband had used inheritance/trust funds for family purposes— relying on trust funds exclusively for the family's support and using both principal and income to purchase and develop the family home. *Id.* at 765-66. Acknowledging that, as the husband argued, a party's use of funds from a separately held account does not necessarily convert the entire account into a marital asset, we concluded:

> "Here, however, the inheritance and husband's investment of labor and skill in its management were husband's contribution to the marital partnership. Both wife and husband were completely dependent on the inheritance/trust funds throughout the latter part of their marriage. We conclude that husband's reliance on the inheritance property as his

---

[12] We also agreed with the trial court that the appreciation of the Lomas Road property over the course of the marriage was a marital asset and that the husband had not rebutted the presumption of the wife's equal contribution to that asset. 240 Or App at 763.

financial contribution to the marital partnership is a form of commingling."

*Id.* at 766.[13]

Here, too, husband and wife relied on the CPA practice as the primary source of the family's income throughout the marriage. Indeed, the parties agreed that wife would forgo employment to take care of the parties' children, household, and rental properties, which, in turn, allowed husband to focus on maintaining and improving the practice. As in *Finear*, the CPA practice and husband's "investment of labor and skill in its management were husband's contribution to the marital partnership," 240 Or App at 766, evidencing husband's intent to commingle that asset into the parties' joint finances. In view of all the circumstances of the parties, we conclude that an equal division of the CPA practice—including its premarital value—is just and proper.

We next must address wife's contention that the trial court erred in its valuation of the CPA practice. That assignment of error requires little discussion. Wife's primary argument—that the court erred in refusing to adopt her expert's fair market value of $439,000 for the practice and instead accepting husband's expert's erroneous definitions of personal goodwill and enterprise goodwill—is foreclosed by *Slater and Slater*, 240 Or App 30, 245 P3d 676 (2010), *rev den*, 350 Or 408 (2011). In *Slater*, which was decided after briefing was complete in this case, we explained that, for purposes of valuation of a closely held business in the marital dissolution context,

"cognizable 'goodwill' refers to the value of a business over and above the value of its assets irrespective of the owner's or professional's continued personal services, or personality or reputation. Accordingly, where a business has no value above and beyond its assets absent the owner personally

---

[13] We ultimately held that the commingling of the inheritance/trust property for the purchase and development of the Lomas Road property and as the sole financial resources for the family weighed in favor of allocating some portion, but not all, of the original inheritance to the wife. 240 Or App at 766. Given that the wife was sharing in the appreciation of the Lomas Road property, which itself represented a significant portion of the inheritance/trust property, as well as other equitable considerations, we concluded that the trial court's division of the property was within its discretion. *Id.* at 768.

promising his or her services to accompany the sale of the business, there is no good will. At the same time, a closely held business may have goodwill value where the success or failure of that business does not rest entirely on the business owner's personal services, personality, or reputation."

*Id.* at 41 (internal quotation marks, brackets, and citations omitted). That rationale, we stated, necessarily also compelled the conclusion that a business valuation may not "properly be predicated on an assumption that, at the time of a putative sale, husband would be bound by a noncompetition covenant, thus enhancing the value of the business." *Id.* at 43. Here, wife's expert's valuation assumed the existence of just such a hypothetical noncompetition agreement; thus, the trial court did not err in rejecting wife's expert's valuation. We are also not persuaded, as wife contends, that the trial court failed to value the enterprise goodwill of the CPA practice. The trial court explicitly rejected husband's net asset approach, which excluded all goodwill, including enterprise goodwill.

To the extent that wife is also arguing that, in any event, the trial court should have used a market approach in calculating the value of the business, we reject that contention as well. The record reflects that both experts recognized the difficulty in evaluating the market for a CPA practice in a small community. Husband's expert testified that neither party's database contained enough information regarding the populations or the household income of the cities where other practices were sold to be comparable. Even wife's expert indicated that he lacked information about the "history of the comparable businesses prior to the year of sale" and "about the individual market area, services provided, market or clientele niche, client mix, or any other specific company risk factors." As noted, the court also found husband's expert's assessments to be more thorough and less speculative than wife's. We agree. In short, we are not persuaded that the trial court erred in valuing the CPA practice.[14]

---

[14] In a memorandum of additional authorities, husband argues that, under *Slater*, the trial court's valuation of the practice should actually be reduced because husband's expert testified that all of the practice's goodwill was personal goodwill and, therefore, the trial court should have adopted his expert's lower, asset-based

We turn next to the parties' dispute over husband's interest in HPLP. The trial court determined that husband's premarital interest was marital property to which the presumption of joint contribution did not apply, that husband had rebutted the presumption of equal contribution with regard to the interest in HPLP acquired by husband during the marriage, and that it was just and equitable to award husband his interest in HPLP as his separate property. As explained below, we see no reason, on *de novo* review, to disturb that award.

We conclude, as did the trial court, that husband rebutted the presumption of equal contribution with respect to the partnership interests that were gifted to husband during the marriage. Husband's father testified that the shares of HPLP that he and his wife gave to husband in 1999 and 2000 were intended for husband's benefit alone. Further, wife presented no evidence that she contributed to the partnership such that it influenced the making of the gift. That is sufficient to rebut the presumption of equal contribution to the initial gifts. *Jenks*, 294 Or at 241; *Olson*, 218 Or App at 9-10.

The same result obtains with respect to the appreciation in HPLP that accrued during the marriage. The trial court found that neither party had directly benefited from husband's ownership interest in HPLP or its predecessor partnership, nor had either party made any significant contribution to the partnership. We agree. Any appreciation in the property that occurred during the marriage was passive. Although that is not necessarily determinative, *see Owens-Koenig and Koenig*, 194 Or App 573, 577, 95 P3d 1152, *modified on recons*, 195 Or App 734, 98 P3d 1143 (2004) ("[P]assive appreciation of a separately held asset is not, itself, automatically separately held[.]"), in this case, nothing husband did affected the value of his interest, and he had no control over the partnership. Consequently, wife also did not contribute to the appreciation by working as a homemaker so that husband could manage the asset. *See Massee*, 328 Or at

---

valuation. The problem with husband's argument is that husband did not cross-assign error to the court's valuation of the CPA practice; therefore, we do not address it.

202-03 ("A homemaker spouse contributes to the acquisition of marital assets, because the performance of domestic tasks by one spouse frees the other spouse to devote energy and concentration to other tasks that may generate marital assets."); *see also Kunze*, 337 Or at 143 (presumption of equal contribution by the husband to appreciation during the marriage of a property inherited by the wife successfully rebutted where the property "required minimal attention from either of the parties" and the husband did not contend that his contributions during the marriage affected that asset).

In this case, although wife performed some work on HPLP properties, she was compensated for those efforts. *See Owens-Koenig*, 194 Or App at 581 (presumption of equal contribution successfully rebutted where, among other considerations, the wife demonstrated that the husband did not provide any "undercompensated service to the marital estate" that would justify its application); *see also Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982) (explaining purpose of presumption of equal contribution). In other words, nothing wife did "directly or indirectly affected the entirely passive appreciation of [the disputed] asset[ ]." *Terhaar and Polance*, 171 Or App 112, 115, 14 P3d 657 (2000), *rev dismissed as improvidently allowed*, 333 Or 596 (2002).

In *Lind*, the husband was given an investment portfolio by his parents before he met his wife. 207 Or App at 58. We held that the husband successfully rebutted the presumption of equal contribution to additions to the portfolio that he made during the marriage. *Id.* at 63. The husband alone managed the investment portfolio, and no interest was ever transferred to the wife. Moreover, all of the portfolio holdings that the husband had acquired during the marriage were generated by the portfolio itself. Thus, the wife did nothing to contribute to the original acquisition of the portfolio, nor did she contribute to the acquisition of new shares during the marriage. *Id.* at 63-64. Under those circumstances, we held, the presumption of equal contribution was successfully rebutted. *Id.* at 64-65. We further concluded that, "because the new assets were 'acquired free of any contributions from the other spouse,'" it was just and proper for the entire asset to be treated as the husband's separate property. *Id.* at 65 (quoting *Kunze*, 337 Or at 135).

The same is true here. Wife did nothing to contribute to the original acquisition of husband's interest in HPLP nor did she contribute anything of significance to the appreciation in HPLP that accrued during the marriage. Thus, husband has effectively rebutted the presumption of equal contribution to the marital portion of that asset. *Stice and Stice*, 308 Or 316, 325-26, 779 P2d 1020 (1989) ("The presumption of equal contribution to the acquisition of property during the marriage may be overcome by a finding that * * * the other spouse has contributed neither economically nor otherwise to the acquisition of the property in issue."). And, as in *Lind*, it is "just and proper" for the entire asset to be awarded to husband as his separate property. "When a party has proved that a marital asset was acquired free of any contributions from the other spouse * * *, this court has determined that, absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Kunze*, 337 Or 134-36. Here, those "other considerations" support treating the entire asset as husband's separate property.

Unlike the Cedar Street property and the CPA practice, husband did not commingle his interest in HPLP with the parties' other assets. He did not use it for family purposes. Indeed, he could not have—other than being compensated for the tax effects of the partnership's profits, husband received no income or benefit from his interests in HPLP. There is no evidence that the parties made any financial decisions in anticipation of benefiting from husband's interest in HPLP. In short, there was no demonstrated reliance upon the disputed property interest as a joint asset. Nor did husband and wife share control of the property. Rather, the evidence showed that management and control of HPLP was held in the hands of husband's father, as the controlling general partner, and that he alone received income from the partnership. There is no suggestion that wife was not fairly compensated for the work she performed on behalf of HPLP properties. In sum, we do not find any equitable considerations that would dictate treating any portion of husband's interest in HPLP as a marital asset to be equally divided. *Cf. Fields and Fields*, 234 Or App 451, 455-56, 228 P3d 614

(2010) (concluding that the wife failed to rebut the presumption of the husband's equal contribution to the appreciation of the wife's minority interest in a family business and that it was just and proper that the husband share equally in that appreciation where the husband assisted in managing the business without being fully compensated for this work, his stewardship contributed to the increase in its value, the parties commingled their finances, the wife integrated her interest in the business into the parties' joint finances, and the husband relied on those separate assets in his financial planning).

Finally, we briefly address the court's disposition of the 1972 Porsche that husband owned before the marriage. We agree with wife that the trial court erred in not treating the appreciation of that asset as a marital asset. *Massee*, 328 Or at 206 (as a general rule, appreciation of property during marriage is a marital asset subject to the presumption of equal contribution). It is undisputed that husband used marital funds to pay for improvements made to the 1972 Porsche during the marriage. Accordingly, we conclude that he did not rebut the presumption that wife contributed to the increased value in the automobile during the marriage and that it is just and proper for wife to receive half of the appreciation of the 1972 Porsche. Husband, however, is entitled, under the principles of commingling discussed above, to retain the premarital value of the car—in particular, wife's name was not on the title, she did not exhibit any control over it, and there is no evidence that the parties relied on it as a joint asset.

In sum, we conclude that the court did not err in valuing the CPA practice and that wife is entitled to share equally in the premarital value of that asset and the Cedar Street property and in the marital appreciation of the 1972 Porsche. Accordingly, we modify the judgment to increase the equalizing judgment payable to wife by $49,125 to $541,906; and otherwise affirm.

Judgment modified to award wife an equalizing judgment of $541,906; otherwise affirmed.