Filed:  February 16, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

PAUL JEFFREY FINEAR,

Respondent on Review,

and

LAURIE LYNNETTE FINEAR,

Petitioner on Review.

(CC 06-0084-D-3; CA A138783; SC S059382)

On review from the Court of Appeals.*

Argued and submitted January 10, 2012.

Laura Graser, Portland, argued the cause and filed the brief for petitioner on review.

Craig M. Cowley, Gevurtz Menashe Lawson and Howe, P.C., Portland, argued the cause and filed the brief for respondent on review.

Before Durham, Balmer, Kistler, Walters, and Linder, Justices.**

PER CURIAM

The petition for review is dismissed as improvidently allowed.

Walters, J., dissented and filed an opinion.


*Appeal from Jackson County Circuit Court, Daniel L. Harris, Judge. 240 Or App 755, 247 P3d 1238 (2011).

**De Muniz, C. J., and Landau, J., did not participate in the consideration of this case.

1

PER CURIAM

The petition for review is dismissed as improvidently allowed.

**WALTERS, J.,** dissenting.

This court has dismissed the petition for review in this case as improvidently allowed. I understand that this case may present unique facts and that, even if this court thought that similar circumstances were likely to recur in the future, it reasonably could conclude that this case does not present an appropriate vehicle to address them, given the potential applicability of a statute that had not been enacted at the time that this case was tried. *See* ORS 107.105(1)(f), *as amended by* Senate Bill (SB) 386 (2011), Oregon Laws 2011, chapter 306, section 1 (effective January 1, 2012).[1] Although I would have preferred, nevertheless, to address the important issues that this case presents, and therefore respectfully dissent from this court's decision to dismiss the petition, I do not write to explain my reasoning in that regard. Instead, I write to remind the bench and bar that this court's decision to dismiss this petition for review does not

---

[1] SB 386 amended ORS 107.105(1)(f), in part, to provide:

"(C) Except as provided in subparagraph (D) of this paragraph, there is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held.

"(D)(i) Property acquired by gift to one party during the marriage and separately held by that party on a continuing basis from the time of receipt is not subject to a presumption of equal contribution under subparagraph (C) of this paragraph.

"(ii) For purposes of this subparagraph, 'property acquired by gift' means property acquired by one party through gift, devise, bequest, operation of law, beneficiary designation or inheritance."

constitute a decision on its merits, *see 1000 Friends of Oregon v. Bd. of Co. Comm.*, 284 Or 41, 45, 584 P2d 1371 (1978) ("it is plain that denial of review in this or any other case may not be taken as expressing even a slight sign that this court approves the decision or the opinion of the Court of Appeals"), and to point out certain aspects of the Court of Appeals opinion that I think require further scrutiny.

In this case, during his 21-year marriage to wife, husband inherited assets worth close to $1.3 million. *Finear and Finear*, 240 Or App 755, 758, 247 P3d 1238 (2011). Husband placed those assets in a trust and used them to purchase, among other things, a 37-acre farm. *Id*. Thereafter, husband chose not to work, as he had previously, as a carpenter earning approximately $50,000 per year, but instead chose to manage the farm. *Id*. at 757. The couple lived on the farm, and wife raised and home-schooled their four children there. *Id*. Husband operated the farm at a loss and used the trust to make improvements to the farm and to pay the family's expenses. *Id*. at 758. Husband maintained control of the family's finances and, with the exception of a monthly allowance of $500 for personal needs, did not permit wife access to any of the family's money. *Id*. at 759.[2]

The trial court and the Court of Appeals decided that wife had not made any contribution to the acquisition of husband's inheritance or the farm and, accordingly, that husband had rebutted the presumption of equal contribution with respect to those

---

[2] From time to time, wife worked outside the home for remuneration. When she did so, husband would reduce the amount of the allowance by the sums that wife earned. *Id*.

assets. *See* ORS 107.105(1)(f)(C) (explaining rebuttable presumption of equal contribution); *Finear*, 240 Or App at 762-63 (explaining both courts' decisions that husband had rebutted presumption of equal contribution).[3]

However, both courts proceeded to determine, as required by ORS 107.105(1)(f), whether it was just and proper to award wife an interest in husband's separate assets. *Id*. at 763-64. The courts considered, as one factor in that analysis, the degree to which husband had commingled those assets into the marital partnership. *Id*. at 764. The trial court found that no commingling had occurred because of husband's separate ownership and management of the property. *Id*. at 759. The Court of Appeals disagreed. It found that husband clearly intended to retain those assets as his separate property and that he had made all of the decisions about how to manage those assets. Those factors, the court said, "weigh[ed] strongly against dividing the inheritance/trust assets." *Id*. at 765. However, the court noted, "aspects of commingling" were present and, in determining a spouse's intent, the court must look at "what the spouse's treatment of the asset demonstrates." *Id*. at 764.

In this case, the Court of Appeals found that husband had used his inherited trust funds to purchase and develop the family farm, which served as the family's residence and source of income, and husband had paid the family's additional living expenses from his trust. Therefore, the court concluded, husband's reliance on the farm

---

[3] As to the appreciation in the value of the farm, the trial court and the Court of Appeals both determined that wife had contributed to the acquisition of that asset and divided it equally. *See id*. at 759 (explaining trial court decision); *id*. at 763 (agreeing with trial court's determination).

and trust as his financial contribution to the marital partnership was a "form of commingling" that weighed in favor of allocating "some portion" of the original inheritance to wife. *Id*. at 766.

Then, rather than concluding that the trial court had misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires and deciding accordingly, the Court of Appeals proceeded to justify the trial court's refusal to allocate any portion of the original inheritance to wife. The Court of Appeals concluded that the acquisition of the farm was, for husband, a "dream fulfilled" and that he had invested his financial and physical resources in improving it. *Id*. at 767. Wife, the court observed, had benefitted from those investments by receiving one-half of the farm's appreciation, and that award had allowed her to be "self-sufficient." *Id*. Therefore, the Court of Appeals concluded, it was appropriate that husband retain the farm and the remainder of his inheritance. *Id*. at 767-68. The Court of Appeals held that the trial court's division of marital property -- 77 percent to husband and 23 percent to wife -- was within its discretion. *Id*. at 768.

I question whether the Court of Appeals was correct in affording husband's controlling and parsimonious intent any weight under the circumstances presented in this case. When husband used his inheritance to buy the farm that served as the family's residence, school, and source of income, at least that farm and perhaps the remaining trust funds that supported that farm were fully integrated into the marital partnership. This court has recognized that acts of commingling may operate to convert a separately acquired asset into a joint asset of the marital partnership. *Kunze and Kunze*, 337 Or 122,

140, 92 P3d 100 (2004). When a spouse uses a separately acquired asset to support his or her family, I do not see any reason why that asset should be treated any differently than assets that that spouse uses similarly but has acquired by virtue of his or her labor. A spouse who earns $1.3 million and uses those earnings to secure the family's home and living must share those earnings and assets on dissolution of a long-term marriage. *See Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982) (stating principle of equal contribution for marital assets acquired through the labor of one spouse during marriage). When a spouse in a long-term marriage uses an inheritance for the same purposes, what equitable considerations urge a different result?

This court has recognized that, absent contrary agreement, couples "ordinarily pledge their troth for better or worse" and "commit themselves to an indefinite shared future[.]" *Jenks and Jenks*, 294 Or 236, 242, 656 P2d 286 (1982). In this case, both parties lived a fruitful financial present and, until their marriage was dissolved, anticipated a bright financial future. I question whether the Court of Appeals carried out the legislative intent of ORS 107.105(1)(f) or served the social and financial objectives of marriage or dissolution, *see Kunze*, 337 Or at 135, when it disregarded the trial court's error in finding a lack of commingling and then deferred to the trial court's lopsided division of the parties' assets to enable husband to fulfill his dream while requiring wife, who had spent the years of her marriage not only raising, but also educating, the parties' children, to make do as best she could.

This court's dismissal of this petition for review does not constitute an endorsement of the Court of Appeals' reasoning or the result that it reached.