DEHOOG, P. J.
*807 Wife appeals from a general judgment dissolving the parties' marriage. She challenges the trial court's division of the marital property, contending that the court erred in awarding husband one-half of the equity in the house that she bought before the marriage. We conclude that the trial court applied the correct methodology and that the resulting award fell within the range of legally permissible outcomes. We therefore affirm.
The salient facts are largely undisputed. In June 2008, before the parties married, wife moved into a house that husband owned in California. For the two years that they lived there, the parties kept separate bank accounts and split the bills evenly. After losing his job in November 2008, husband allowed the California house to go into foreclosure and filed for bankruptcy.
In 2010, the parties, who still were not married, moved to Eugene, where wife had purchased a replacement home. They had travelled to Oregon the year before to find a house to buy, but they were initially unsuccessful. Wife's father subsequently found the Eugene house, which, although a "fixer-upper," appeared to be a good fit for the parties and their children.[1] With her father's financial assistance, wife purchased the home in March 2010. Wife had asked her father to gift her a portion of her anticipated inheritance. Wife's father agreed to gift her the $43,600 needed to close on the home, and wife took out a mortgage to pay the remaining balance of $174,400. Wife purchased the property solely in her name because, as the parties had discussed, husband's recent bankruptcy made him a poor candidate for a loan.
At trial, the parties testified about their relative contributions to renovations that they made to the house. Husband moved to the new home several weeks in advance of wife and the children to complete work on an unusable bathroom, and he testified to having made other extensive renovations in the years that followed. He acknowledged, *246 *808 however, that his own father, as well as wife, her father, and her stepfather, all helped with various projects; wife also testified that much of the work was done by professionals. Husband further testified that he did many of the renovations after the parties were married, including work on the family room, the kitchen, and the master bedroom and bath. He estimated that about half of the renovations were completed after the parties married.
The parties married in June 2012. At that time, wife, who had acquired the house in her previous name, signed the property over to herself in her new, married name. The parties continued to split bills evenly after they married. Both before and after the parties married, husband made monthly transfers of at least $1,215 into wife's account. According to husband, those payments were intended to cover the mortgage payments of $1,204.83. Wife disputed husband's contention that the payments were specifically designated for the mortgage, and testified that they simply went to husband's half of the bills. Wife acknowledged, however, that those bills included the mortgage payment. After the parties married, husband began depositing his entire paycheck-which was more than $1,215-directly into wife's account.
After hearing the evidence and arguments, the trial court found that the Eugene home was a premarital asset of wife and, therefore, the presumption of equal contribution did not apply. The court then considered whether there had been sufficient commingling of energy, time, and financial or other resources, such that a "just and equitable" distribution would require awarding husband a share of the home's equity. In making that determination, the court considered, in particular:
• Husband's efforts in arriving early and preparing the house for wife and the children.
• The parties' use of the home as the family residence.
• Husband's considerable expenditure of labor, or "sweat equity," in improving the home.
• Husband's contribution of his paychecks into an account from which the family's bills-including the mortgage-were paid.
*809 • The parties' "very interwoven and commingled" finances, with the upkeep, maintenance, and renovation of the family home being paid from a shared account.
• The parties' objective in their marriage-and their relationship that preceded the marriage-to rebuild the home together and provide each other with financial and emotional support.
Based on those considerations, the court found that it was appropriate to award one-half of the equity in the home to each party. The trial court found that, as of the date of dissolution, the real property had a fair market value of $240,000 and a mortgage balance of $158,608, resulting in equity in the amount of $81,392. Accordingly, the trial court awarded husband a money award in the amount of $40,696.
Wife argues on appeal that the trial court erred in awarding one-half of the equity of the home to each party after finding that wife had "rebutted" the presumption of equal contribution.[2] She further contends that the court was required to make findings regarding each party's contribution to the marital property and that the court failed to analyze what disposition would be just and proper. Husband responds that the trial court properly applied the statutory and equitable considerations that ORS 107.105(1)(f) requires and that the resulting award constitutes a just and proper division of the property that falls within the range of legally permissible outcomes.
Before turning to those arguments, we review the applicable law and our standard of review. Property division at dissolution is governed by ORS 107.105, which provides, in relevant part:
"(1) Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:
*247 " * * * * *
*810 "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:
" * * * * *
"(C) Except as provided in subparagraph (D) of this paragraph, there is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."
We will not disturb a trial court's ultimate determination of what property division is just and proper unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105(1)(f) ; determining what is just and proper in all the circumstances is a matter of discretion. Finear and Finear , 240 Or.App. 755, 763-64, 247 P.3d 1238 (2011), rev dismissed , 351 Or. 580, 273 P.3d 103 (2012) (citing Kunze and Kunze , 337 Or. 122, 136, 92 P.3d 100 (2004) ). Put differently, "to earn the measure of deference to which discretionary decisions are entitled on appeal, a trial court's property award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes." Olson and Olson , 218 Or.App. 1, 16, 178 P.3d 272 (2008). Absent an error in methodology or an outcome outside of the legally permissible range, we will affirm a trial court's determination as to what property division is just and proper.[3] We proceed to consider the trial court's award under those standards.
An established framework governs the disposition of marital property. ORS 107.105(1)(f) distinguishes between property brought into the marriage and property acquired during the marriage. Real or personal property acquired by either spouse, or both, during a marriage is a "marital asset." Kunze , 337 Or. at 133, 92 P.3d 100. The presumption of equal contribution applies to all marital assets, "whether such property is jointly or separately held." ORS 107.105(1)(f)(C) ;
*811 Id. The just and proper distribution of marital assets is typically the equal division of the assets between spouses. Id. at 134, 92 P.3d 100. Assets acquired before the marriage, on the other hand, are not marital assets and are not subject to the presumption of equal contribution. Id . Like marital assets, premarital assets are ultimately subject to whatever division or other disposition is "just and proper in all the circumstances." ORS 107.105(1)(f) ; Hanscam and Hanscam , 247 Or.App. 207, 216, 268 P.3d 715 (2011) (citing Kunze , 337 Or. at 139, 92 P.3d 100 ). Typically, however, the just and proper distribution of a premarital asset is to award the asset to its holder.
Thus, after determining the nature of the parties' assets, the court must proceed to distribute all assets in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f). In determining what is just and proper, the trial court's focus is on equitable considerations, including such matters as "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and *** the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." Kunze , 337 Or. at 135-36, 92 P.3d 100.
As the foregoing suggests, acts of commingling may convert a separately acquired asset into a joint asset of the marital partnership. Id. at 139, 92 P.3d 100. Commingling depends to a large extent on intent. Lind and Lind , 207 Or.App. 56, 67, 139 P.3d 1032 (2006). Intent, in turn, depends not on what the spouse might privately contemplate or publicly declare, but how the spouse acts , that is, what the spouse's treatment of the asset demonstrates. Id. In considering whether a spouse intended a separately acquired *248 asset to remain separate or to become a joint asset, the court may consider such factors as whether the disputed property was jointly or separately held, whether the parties shared control over the property, and the parties' degree of reliance on the property as a joint asset. Kunze , 337 Or. at 141, 92 P.3d 100. Those factors neither establish a step-by-step commingling analysis nor set forth an exclusive list of considerations. Tsukamaki and Tsukamaki , 199 Or.App. 577, 585, 112 P.3d 416 (2005). Rather, each factor is one out of "many possible indicia" of the spouse's intent, or an alternative method by which an asset can become *812 commingled. Id. We have, however, noted that the "use of a separately acquired house as a family home is powerful evidence (although certainly not dispositive) of commingling." Lind , 207 Or.App. at 68, 139 P.3d 1032 ; see also Hanscam , 247 Or.App. at 221, 268 P.3d 715 (committing premarital property to family uses is evidence of commingling).
Applying that framework here, the trial court was first required to determine when the parties acquired the property at issue. Kunze , 337 Or. at 133-34, 92 P.3d 100 ; ORS 107.105 (1)(f). Husband does not dispute that wife purchased the marital home before the parties married, with funds that her father had given her for that specific purpose. Moreover, even though husband testified that he had made a number of improvements to the home after the marriage, he ultimately did not challenge the trial court's apparent determination that the whole equity in the home-and not merely the premarital equity-was wife's separate property. Given those circumstances, we conclude that the trial court correctly ruled that the presumption of equal contribution did not apply.
Next, we review whether the trial court properly exercised its discretion in determining that it was just and proper to award each party one-half of that equity. As we have explained, that review requires us to determine whether that award "reflect[s] the exercise of discretion under the correct methodology, and *** lie[s] within the range of legally permissible outcomes." Olson , 218 Or.App. at 16, 178 P.3d 272. Applying that standard, we conclude that the trial court did not abuse its discretion.
First, the record establishes that the trial court followed the correct methodology in determining a just and proper disposition of the equity in the marital residence. The court's oral ruling reflected its consideration of several of the equitable factors that we have recognized in our case law. The court expressly found that the actions of the parties had commingled their finances, including their interests in the home, with husband's sweat equity commingling with wife's down payment and husband and wife both contributing to the mortgage payment. The court also considered the fact that inequity might result from awarding the home and all *813 of its equity to wife. In particular, the court considered that the acquisition and renovation of the Eugene home was a joint project and central to the parties' efforts to build a life together. In that regard, the trial court considered the home to be just one aspect of the parties' overarching objective of providing each other with financial and emotional support. Each of those equitable factors was an appropriate consideration in determining what was just and proper.
Second, as our case law suggests, the trial court's conclusion, that it would be just and proper in all the circumstances to award one-half of the equity in the home to each party, fell within the legally permissible range of outcomes. For example, in Lind , the court found that an equal division of one party's separately acquired house was just and proper because of the parties' demonstrated intent to commingle their interests in the home. 207 Or.App. at 68, 139 P.3d 1032. The factors that we considered significant there included the following: the house was used as the family home; mortgage payments were paid out of the husband's income, which was itself a marital asset; the wife contributed design and construction ideas and had primary responsibility for decorating the house; the wife raised her son in the house; and, while working and contributing to the family coffers, the wife maintained the home and cared for the yard. Id . In this case, the house was used as a family home; mortgage payments came from both parties' incomes; husband *249 contributed sweat equity through his role in remodeling the home; both parties raised their children in the house during the marriage; and, after they married, both parties maintained the home while working and contributing to the family coffers. The close parallels between this case and Lind persuade us that awarding husband one-half the equity was within the legally permissible range of outcomes.
We briefly address wife's remaining arguments. Wife first argues that the trial court erred because it made no findings separating the value of the marital property attributable to appreciation or improvements made after the parties were married from the equity attributable to wife's initial contribution. However, wife never advanced that argument to the trial court. Moreover, the just and proper *814 analysis, in contrast to the determination of which assets are "marital assets," is not focused on the parties' respective contributions. See Hanscam , 247 Or.App. at 216, 268 P.3d 715. Rather, as we have explained, what is just and proper depends on various equitable factors, many of which the trial court expressly considered. Accordingly, to the extent that a court might, in some other circumstance, be required to make additional findings, the failure to do so here was not error.
Wife next argues that, because the parties' marriage lasted only two years, it was "short-term," and the trial court should have considered that factor in making a just and proper determination. Wife's reliance on the "short-term marriage" concept is, however, misguided. A short-term marriage is not merely one of short duration; it is one in which "the marriage is terminated before the parties' financial affairs become commingled or committed to the needs of children to the point that the parties cannot readily be restored to their pre-marital situations[.]" Jenks and Jenks , 294 Or. 236, 242, 656 P.2d 286 (1982). That, rather than any specific number of months or years, is the meaning of a short-term marriage, because,
"[w]ith each common financial act or decision, *** the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the over-all task of making a property division which is 'just and proper in all the circumstances.' "
Id. (quoting ORS 107.105(1)(f) ); see also Francis and Francis , 212 Or.App. 310, 316, 157 P.3d 1202 (2007) (just and proper to equally divide separately acquired property even though marriage lasted only two years because "we do not focus solely on the length of the marriage when determining the 'just and proper' property distribution"). Given the trial court's finding in this case that the parties' financial arrangement was "very interwoven and commingled," we are not persuaded that the court erroneously failed to consider the length of the parties' marriage in calculating its property award.
The trial court applied the correct methodology in determining what property division would be just and proper, *815 and its ultimate decision lies within the range of legally permissible outcomes. The trial court did not abuse its discretion in awarding each party one-half of the equity in the marital home.
Affirmed.

At the time of the move, wife and husband each had one, nonjoint child living with the family; the parties have no joint children.

As noted, the trial court determined that the Eugene house was wife's premarital asset, and that the presumption of equal contribution did not, therefore, apply. As a result, wife's assertion that the trial court found that she had "rebutted" that presumption is misplaced.

Although we have discretion to review domestic relations cases de novo , ORS 19.415(3)(b), neither party requests de novo review, and we decline to exercise our discretion to engage in such review. See ORAP 5.40(8)(c) (stating that we exercise de novo review "only in exceptional cases").