TOOKEY, J.
*585 Husband appeals from a judgment dissolving the parties' marriage, contending that the trial court erred in its award of spousal support and its division of marital property. We write to address only husband's contentions regarding the property division. Because the record reflects various legal errors by the trial court, we reverse the property division portion of the judgment and remand for reconsideration.
Husband requests de novo review; however, this is not an exceptional case, and we therefore decline to exercise our discretion to review de novo . See ORS 19.415(3)(b) (court has discretion to apply de novo review in equitable actions); ORAP 5.40(8)(c) (court will exercise discretion to review de novo only in exceptional cases). Thus, in reviewing the judgment, we are bound by the trial court's findings that are supported by any evidence in the record. Kaptur and Kaptur , 256 Or. App. 591, 596 n. 2, 302 P.3d 819 (2013). We state the facts in a manner consistent with the trial court's express and implied findings, supplemented with uncontroverted information from the record. Stuart and Ely , 259 Or. App. 175, 177, 313 P.3d 317 (2013).
The parties lived together for eleven years before they married in July 2011. The dissolution trial began on March 8, 2016. The trial court issued a letter opinion on June 27, 2016, and entered a judgment of dissolution on October 13, 2016. During the parties' five year marriage, they had a five-month separation from November 2012 to April 2013, and a two-year separation from July 16, 2014, to the date of dissolution. The trial court found the duration of the marriage to be two and a half years. At the time of trial, husband was 58 years old and wife was 52. There are no children of the marriage.
Husband came into the relationship with some assets, including real property, $8,000 in cash, and $3,000 in coins. Wife came into the relationship with an IRA valued at approximately $41,000. At the time of the marriage, husband owned three investment properties, one investment account, and two bank accounts, as well as the cash and coins. Wife continued to own her IRA, then valued at *586 approximately $68,000. From the beginning of their relationship, the parties agreed not to commingle their finances or assets. Thus, they did not acquire or own any joint property.
Husband is a builder, in the business of buying homes to remodel and sell. Throughout the period of cohabitation and marriage, the parties lived in homes that husband was remodeling to resell. The parties lived primarily off of husband's earnings. Wife earned a small amount of income from work outside the home and occasionally contributed to payment of household expenses.
*1157 During the first five years of the parties' cohabitation, husband also owned a cabinetry business. Wife worked part-time in the cabinetry business for two years as a paid employee. Also during the years of cohabitation, husband did remodeling for private clients. Wife testified that she made unpaid contributions to that business, by meeting with clients, helping husband shop for supplies, doing yard work and clean-up, and helping to rip out carpets, floors, and fireplaces.
During the marriage, wife focused primarily on household responsibilities and yard work, and continued to provide some unpaid help in the business. During the parties' second period of separation, husband paid wife temporary support and continued to pay wife's living expenses, including a mortgage, utilities, and insurance.
We set out the relevant legal principles. ORS 107.105(1)(f) provides:
"Whenever the court renders a judgment of marital *** dissolution ***, the court may provide in the judgment:
"* * * * *
"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:
"* * * * *
*587 "(C) Except as provided in subparagraph (D) of this paragraph, there is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."
Under ORS 107.105(1)(f), there are two classes of property subject to a dissolution court's dispositional authority. Pierson and Pierson , 294 Or. 117, 121-22, 653 P.2d 1258 (1982). "Marital property" is all the property owned by the parties at the time of dissolution, "and can include property owned prior to marriage." Id . ; Massee and Massee , 328 Or. 195, 201 n. 2, 970 P.2d 1203 (1999) (citing Pierson ). Under ORS 107.105(1)(f), the dissolution court is required to make a distribution of marital property that is "just and proper in all the circumstances."
Another class of marital property, "marital assets" are properties acquired by the parties during the marriage, and does not include "assets brought into the marriage by either spouse." Pierson , 294 Or. at 121-22, 653 P.2d 1258. A spouse's contribution as a homemaker is considered to be a contribution to the acquisition of marital assets. ORS 107.105(1)(f) ; Massee , 328 Or. at 207, 970 P.2d 1203 (In determining a spouse's overall contribution, the court must consider the magnitude of the homemaker spouse's homemaker contribution.).
There is a rebuttable presumption that each party contributed equally to the acquisition of marital assets. ORS 107.105(1)(f)(C). The presumption of equal contribution also applies to the appreciation in the value of an asset during the marriage. Massee , 328 Or. at 207, 970 P.2d 1203. If the presumption of equal contribution is not rebutted, marital assets will generally be divided equally between the parties. Kunze and Kunze , 337 Or. 122, 134, 92 P.3d 100 (2004). Here, except with respect to the appreciation in husband's business, the trial court found that husband did not rebut the presumption of the parties' equal contribution to the marital assets.
In making a property division, the court first determines which assets are marital assets, and then makes a preliminary determination of the appropriate division of the marital assets by applying the presumption of equal contribution. Kunze , 337 Or. at 135, 92 P.3d 100. The court then considers what *588 division of all the marital property is just and proper in the circumstances. Id. As a general rule, if the property is not a marital asset, but acquired before the marriage, the court "considers only what is 'just and proper in all the circumstances' " in dividing the property. Id. at 133-34, 92 P.3d 100.
Equitable considerations in the just and proper division of marital property include the preservation of assets, the achievement of economic self-sufficiency of both spouses, the particular needs of the *1158 parties, and the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marriage through commingling. Id . at 136, 92 P.3d 100. To determine whether a spouse has so integrated a separately acquired asset, the court focuses on whether the spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, the spouse intended for that asset to become joint property of the marital estate. For example, use of a separately acquired property as a marital home can be a type of commingling that weighs in favor of dividing the asset. Id. at 140-41, 92 P.3d 100 (citing Jenks and Jenks , 294 Or. 236, 241-42, 656 P.2d 286 (1982) ).
The trial court in this case issued a letter opinion addressing the parties' property division. As relevant to the issues raised on appeal, the trial court found that wife's credibility was "in serious question." The court found that the parties had expressed a strong intention to keep their assets and finances separate during the premarital and marital periods. Thus, the court rejected wife's contention that, during the period of cohabitation, the parties were in a domestic partnership. See Beal and Beal , 282 Or. 115, 123, 577 P.2d 507 (1978) (when courts address property disputes of individuals "who have been living together in a nonmarital domestic relationship" property should be distributed "based upon the express or implied intent of those parties"). The court's conclusion that the parties intended to keep their finances and property separate is relevant, in the context of the "just and proper" determination, to the court's consideration of the extent to which the parties integrated separately acquired assets into the common financial affairs of the marriage through commingling.
*589 Kunze , 337 Or. at 142, 92 P.3d 100 ("[I]n deciding whether the court should include a separately acquired asset in the property division because of commingling, the court's inquiry properly focuses upon whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate.").
All of the disputed assets were owned by husband at the time of dissolution. In its letter opinion, the trial court determined that the parties' marital assets-i.e. , assets acquired during the marriage-consisted of a home in Lincoln City on 8th Court, three vehicles, and three bank accounts. As to those marital assets, the court concluded that husband had not rebutted the presumption of equal contribution. On a ledger worksheet attached to the court's letter opinion, the court listed those marital assets, among others, on husband's side, to be divided equally between the parties in calculating the amount of wife's equalizing judgment.
Other property owned by husband at the time of dissolution included the Port House, which husband had acquired before the marriage and where the parties had lived for three to four years before the marriage. The court valued the Port House at $252,500 at the time of dissolution. Despite the parties' stated intention to keep their property separate, the trial court found in its letter opinion that wife had made a 50 percent contribution to the Port House before the marriage and concluded that wife should share equally in its equity, after the deduction of husband's premarital financial contribution to its acquisition. The court did not separately address husband's cash or his coin collection in its letter opinion but listed their values on husband's side of the ledger and divided them equally in setting the amount of wife's equalizing judgment. The equal division of all the property listed on the ledger resulted in an equalizing judgment to wife of $190,677.
On appeal from the dissolution judgment, we review the dissolution court's resolution of legal questions for errors of law. Herald and Steadman , 355 Or. 104, 107, 322 P.3d 546 (2014). The court's ultimate determination as to what *590 overall property division is "just and proper" is a matter of discretion that will we review for an abuse of discretion. Id. The property division will not be disturbed "unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105(1)(f) ; determining what is just and proper in all circumstances is a matter of *1159 discretion." Van Winkel and Van Winkel , 289 Or. App. 805, 810, 412 P.3d 243, rev. den. , 363 Or. 224, 434 P.3d 24 (2018); Code and Code , 280 Or. App. 266, 274, 380 P.3d 1073 (2016) (the final "just and proper" division "is a matter of discretion that we will not disturb on appeal unless we conclude that the trial court misapplied the statutory and equitable considerations").
In husband's view, in determining a just and proper division of the marital property, the trial court committed legal error in failing to honor the parties' intentions to keep their property separate, in failing to properly identify and value the marital property as of the time of trial, and in failing to properly attribute the parties' separate contributions to marital assets and premarital assets pursuant to the rules set out in Kunze and Massee , and therefore erred in determining the amount of the equalizing judgment. We address each asset and the parties' arguments in turn.
At the time of dissolution, husband owned the 8th Court House. The trial court found that the 8th Court House was a marital asset, and husband does not dispute that determination. Husband purchased the 8th Court House in September 2011, shortly after the parties were married, with a down payment of $74,488, derived from profits from the sale of premarital property owned by husband, and husband held the 8th Court House in his name only. The house was purchased to be remodeled and sold. The parties lived there together for approximately two years during the marriage while the house was being remodeled. Wife continued to live in the house during the second period of separation. In its letter opinion, the trial court concluded that husband had not rebutted the presumption of equal contribution as to the equity in the 8th Court House, explaining that wife was "primarily a homemaker," provided husband with lunches and dinners, did yard maintenance, and kept the house clean during extensive remodeling. Thus, the trial court *591 awarded the house to husband and included in the equalizing judgment half of the full net equity-$88,044.
Husband contends on appeal that the trial court erred in determining that he had not overcome the presumption of equal contribution with respect to the initial down payment of $74,488 for the purchase of the 8th Court House, and we agree. As the court held in Kunze , 337 Or. at 145, 92 P.3d 100, the presumption of equal contribution is overcome with respect to equity attributable to a contribution of premarital funds. See also Lind and Lind , 207 Or. App. 56, 66, 139 P.3d 1032 (2006) (holding that "when a disputed piece of real property is purchased during the marriage with proceeds from one party's separately held asset, that party rebuts the presumption of equal contribution as to that portion of the property's value traceable to those proceeds"). We agree with husband that the trial court erred in concluding that the presumption of equal contribution was not rebutted with respect to the $74,488 in separate funds that husband contributed to the purchase of the 8th Court House. Thus, on remand, the court should reconsider the division of the 8th Court House in light of husband's rebuttal of the presumption of equal contribution with respect to the separately contributed premarital funds.
At the time of dissolution, husband owned two Wells Fargo bank accounts. Husband contended at trial and testified that the accounts held funds that he intended to keep separate, including proceeds from the sale of properties he owned before the marriage, and part of an inheritance from his mother's estate. The trial court nonetheless found that the accounts were marital assets, stating that husband had not established to the court's satisfaction that the balances in those accounts were traceable to premarital or nonmarital assets. Additionally, despite finding that the parties had no intention to commingle their finances, the court further found that whatever separate funds of husband's had been placed in the accounts were commingled with husband's earnings during the marriage. Thus, the court treated the account balances as marital assets to be divided equally. On the worksheet attached to the trial court's letter opinion, the court placed on husband's side of the ledger the two Wells *592 Fargo accounts, with a stated balance of $209,662, and a Capital One account with a stated balance of $50,000, and divided those *1160 amounts equally between the parties through the equalizing judgment.
On appeal, husband continues to contend that the funds in the accounts were separately owned, traceable to husband's inheritance and to the sale of separate assets that had not been commingled. There is some evidence in the record, in the form of husband's testimony, to support husband's contention. See Stewart and Stewart , 290 Or. App. 864, 871, 417 P.3d 438 (2018) (stating that the presumption of equal contribution can be rebutted through testimony in the absence of complete written documentation, as wife's testimony "fill[ed] in the gaps in the documentation that wife provided"). But husband's most persuasive argument is that the evidence on which the trial court relied in valuing the accounts was outdated. The Capital One account did not exist at the time of trial or on the date of dissolution, and the Wells Fargo accounts had been significantly spent down by husband during the two-year separation to pay his own expenses and wife's living expenses, including payments for the mortgage and expenses on the 8th Court House, and wife's insurance. The record includes a Wells Fargo bank statement dated February 19, 2016, just several weeks before the beginning of trial, showing a combined balance of $34,191.28 in the two Wells Fargo accounts.
As husband points out, in the absence of evidence of waste of the funds during a period of separation, assets are to be valued as of the date of dissolution. See Stokes and Stokes , 234 Or. App. 566, 576, 228 P.3d 701 (2010) (proper date for valuation of a marital asset is date of dissolution); Peterson and Peterson , 141 Or. App. 446, 450, 918 P.2d 858 (1996) (trial court errs in not using value of asset at date closest to date of dissolution); Olinger and Olinger , 75 Or. App. 351, 357, 707 P.2d 64, rev. den. , 300 Or. 367, 712 P.2d 109 (1985) (in the absence of a long period of separation with mutual financial independence, property interests are to be valued as of the date of dissolution). We agree with husband that there is no evidence in the record from which a trier of fact could find that husband wasted funds or that, as of the date of dissolution, the Wells Fargo accounts held a balance of $209,662.
*593 There is also no evidence that a Capital One account held a balance of $50,000. Indeed, as noted, the Capital One account had been closed and its funds transferred to a Wells Fargo account more than a year before the date of dissolution. On remand, the trial court will have an opportunity to reconsider the equalizing judgment in light of the actual account balances as of the date of dissolution.
When the parties met, husband had old coins valued at approximately $3,000. Husband also had $8,000 in cash; he testified that he kept that money in a safe to which wife did not have access. Husband testified that he added small amounts of cash to the safe over a period of 15 years and that, by the time the parties separated, he had saved approximately $18,000, to be used in the case of an economic downturn. Husband testified that, after the parties separated, he deposited the cash in a Wells Fargo account. Wife testified that husband told her that he had set the money aside for the parties' retirement.
The dissolution court did not mention the cash or coins in its letter opinion, but apparently concluded that husband had commingled their value, because the court listed "cash and coins" as a separate asset on husband's side of the ledger, valued at $21,000, and divided it equally in determining the amount of wife's equalizing judgment.[1]
Husband argues that, in light of undisputed evidence that a large portion of the amount of cash in the safe was premarital savings, the dissolution court abused its discretion in determining that the full value of the cash and coins had been commingled. Like the Capital One account, the evidence at trial requires the finding that, as of the date *1161 of dissolution, the cash did not exist as a separate asset, because husband had deposited it into one of the Wells Fargo accounts. We have already addressed the Wells Fargo accounts and the need for the trial court to adjust the *594 equalizing judgment so as to reflect the actual balances of those accounts as of the date of dissolution, and the cash can be accounted for in that context. As for the coins, it is undisputed that they are husband's separate property. On remand, the court will have an opportunity to reconsider whether to divide their value as a part of the just and proper division of marital property.
Finally, we address the Port House. Husband acquired the Port House six years before the marriage, in part with proceeds of $42,905.43 from the sale of another house that husband had purchased and sold in 2005. The Port House is not a marital asset. Thus, it is not subject to a presumption of equal contribution. The parties lived in the Port House for three to four years before the marriage while it was being remodeled, and wife was a homemaker there and improved the yard. In determining the division of the equity of $46,192 of that asset, citing Lind , 207 Or. App. at 68, 139 P.3d 1032 ("use of a separately acquired house as a family home is powerful evidence (although certainly not dispositive) of commingling"), the trial court found that, other than with respect to husband's premarital contribution, wife made a fifty percent contribution to the asset. But the court credited husband with only $12,877 of his separate down payment of $44,068.08 that the record shows he contributed to the purchase of the Port House, and divided the rest of the $33,315 in equity through the equalizing judgment.
Husband contends that, to the extent that the trial court found that the Port House had been commingled and was subject to division, the court erred in failing to credit his entire premarital investment of $44,068.08 against equity in the property in determining a just and proper division of the property. Husband is correct that his premarital contribution would ordinarily reduce any equity to be divided as a result of commingling. Kunze , 337 Or. at 145, 92 P.3d 100. We note also that not all commingling requires the inclusion of separately acquired property in the property division. Id. at 142, 92 P.3d 100. The commingling must demonstrate " 'an intent for that asset to become a joint asset of the marital partnership.' " Olson and Olson , 218 Or. App. 1, 12, 178 P.3d 272 (2008). The evidence in the record would not support that finding with respect to *595 the Port House. Nonetheless, on remand, the trial court will have an opportunity to reconsider whether, in light of the property division as a whole, which largely favors husband, it is just and proper for wife to share equally in the Port House equity of $33,315 as of the date of dissolution. See Kunze , 337 Or. at 135, 92 P.3d 100 (In the final "just and proper" division, the court's inquiry "concerns the equity of the property division in view of all the circumstances of the parties.").
We reject husband's remaining arguments without discussion.
Reversed and remanded for reconsideration of property division; otherwise affirmed.

Wife contends that any complaint by husband about the division of the cash and coins has not been preserved, because husband never requested that he be awarded the cash and coins. It is true that husband did not specifically request that the cash and coins be awarded to him, but he did make a general assertion that he had overcome the presumption of equal contribution as to all separately held property. We agree with husband that his contention on appeal regarding the distribution of the cash and coins has been preserved.