Argued and submitted May 9, affirmed August 31, 2022

In the Matter of the Marriage of

Holly Ann MORRISON,
*Petitioner-Respondent,*
*and*

Paul Francis CHIERICHETTI,
*Respondent-Appellant.*

Josephine County Circuit Court
20DR08353; A176188

516 P3d 1196

Husband appeals from a judgment dissolving the parties' marriage, challenging the trial court's division of marital property. He argues that the trial court erred in its division of two properties by awarding wife one-half of the equity in properties for which husband provided the down payment. *Held*: The trial court did not err. The trial court properly considered commingling as one of the factors in making a "just and proper" distribution of marital property, because the interrelation of the parties' finances determines whether a marriage is considered "short term," not the temporal length of the marriage. The evidence in the record supported the trial court's determination that husband intended the properties to be marital assets. Accordingly, it was within the range of legally permissible outcomes for the trial court to conclude that the parties commingled the properties and to award wife one-half of the equity in those properties.

Affirmed.

Sarah E. McGlaughlin, Judge.

Melisa A. Button argued the cause for appellant. Also on the briefs was Stefanie L. Burke.

George W. Kelly argued the cause and filed the brief for respondent.

Before Powers, Presiding Judge, and Lagesen, Chief Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Husband appeals from a judgment dissolving the parties' marriage, challenging the trial court's division of marital property. He argues that the trial court erred in its division of two properties by awarding wife one-half of the equity in properties for which husband provided the down payment. We conclude that the trial court did not err in its methodology and that the resulting distribution was within the range of permissible legal outcomes. Accordingly, we affirm.

## BACKGROUND

We are bound by the trial court's factual findings that are supported by the evidence, and we state the facts consistent with the trial court's express and implied findings. *Maldonado and Freed*, 294 Or App 583, 585, 432 P3d 1154 (2018).[1]

The parties met in 2016 and were married in May 2018. At the time of their marriage, wife was 57 years old, and husband was 67 years old. In September 2017, the parties purchased a property in Josephine County to serve as their marital home (Wagon Wheel). Wife helped locate Wagon Wheel and husband provided the $430,000 down payment using cash from his premarital assets. Wife did not financially contribute to the purchase of Wagon Wheel, but she made decisions regarding the home's renovations, and both her and husband's names were on the home's title.

Wife sold her premarital home and moved into Wagon Wheel alone prior to the marriage. Referring to himself as "Paul the Provider," husband supported wife's plans to give away and wind down her cleaning and fiduciary businesses and promised to financially support her. Before the May 2018 marriage, wife testified that the parties had discussed a prenuptial agreement with husband's attorneys, but they decided not to establish one because they believed they would never divorce.

---

[1] Neither party has requested *de novo* review, and, because this is not an exceptional case, we decline to exercise our discretion to review *de novo*. *See* ORS 19.415(3)(b) (court has discretion to apply *de novo* review in equitable actions); ORAP 5.40(8)(c) (court will exercise *de novo* review only in exceptional circumstances).

By August 2018, about three months into their marriage, husband had moved out of Wagon Wheel and back into his premarital home. The parties continued to live separately for the remainder of their marriage.

In June 2019, the parties purchased a second property in Multnomah County (Yamhill). Wife located Yamhill and husband again provided the down payment, using $400,000 that he had inherited during the marriage. The parties took out a joint mortgage to cover the remaining $145,000. Yamhill had two living areas, one that the parties intended to stay in together when they visited Portland and a second that the parties leased to tenants. Wife and her daughter opened a joint checking account, into which they deposited rental income and from which wife wrote checks to pay contractors.

Despite living in separate homes during this time, the parties continued to share finances. The parties continued to pay their bills primarily from a joint checking account with wife writing the necessary checks. Wife contributed the last $15,000 of her fiduciary income into that bank account, but husband provided the majority of the funds with his income. In July 2019, husband also executed a will and trust providing that the majority of his estate would pass to wife after distributions to his children.

Following a trial, the trial court concluded that, because it was purchased before the marriage, Wagon Wheel was not a marital asset and husband's $430,000 down payment was therefore not subject to the presumption of equal contribution.[2] Because Yamhill was purchased during the marriage, the trial court concluded that Yamhill was subject to the presumption of equal contribution. The trial court, however, concluded that husband rebutted the presumption of equal contribution as to the $400,000 down payment that came from his inheritance.

The trial court then considered whether a "just and proper" distribution would require that wife receive a

---

[2] The trial court distinguished that the appreciation of Wagon Wheel during the marriage was a marital asset and split the appreciation equally in accordance with the presumption of equal contribution. Husband does not challenge the equal split of the appreciation in either property.

portion of husband's contributions to the purchase of Wagon Wheel and Yamhill. Within that analysis, the trial court determined that husband's contributions had been commingled to such an extent as to become part of the marital estate. The court found that husband's intent to share the value of his contributions with wife was evidenced by:

- The parties holding joint title to Wagon Wheel and Yamhill and sharing the mortgage for Yamhill since the time of acquisition.

- The parties' intent to reside at Wagon Wheel as a married couple.

- Wife's continued residence at Wagon Wheel even after husband moved to another property.

- The parties' purchase, almost a year after husband moved out of Wagon Wheel, of another property that they intended to live at together and to which they held joint title.

- Husband's execution of a will leaving the majority of his estate to wife.

- The parties' express decision not to execute a prenuptial agreement.

- Husband's testimony at trial that he intended the properties to be owned by both parties "[i]n marriage."

- Wife's control of the renovation decisions for the properties and work with the property management company for Yamhill.

The trial court also found that it was equitable to award wife a portion of husband's contributions because she gave away her cleaning business and stopped taking fiduciary work in reliance on husband's encouragement to rely on him to provide for her financial needs.

Based on those equitable considerations, the trial court awarded wife one-half of the remaining proceeds of both properties after payments for mortgage debt, repairs, and an equalizing judgment to husband.

On appeal, husband argues that the trial court erred in determining that it was just and proper to award one-half of the equity to wife. He argues that the court erred in solely focusing on whether the property was commingled, failing to take into account the short-term nature of the parties' marriage, and ultimately determining that the properties were commingled. Wife responds that the trial court's division of property was just and proper and fell within the range of legally permissible outcomes.

## STANDARD OF REVIEW

We review the trial court's resolution of legal questions for errors of law, and we review the trial court's ultimate determination as to what overall property division is just and proper for an abuse of discretion. *Maldonado*, 294 Or App at 589-90. We will not disturb the trial court's division unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105. *Id.* at 590.

## LEGAL FRAMEWORK

Property division upon dissolution of marriage is governed by ORS 107.105(1)(f), which provides:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * [T]here is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

There are therefore two types of property at issue in a dissolution. First, "marital assets" are real or personal property acquired by either spouse during a marriage. *Kunze and Kunze*, 337 Or 122, 133-34, 92 P3d 100 (2004). The presumption of equal contribution applies to marital assets and directs the court that, unless proven otherwise, the court

must find that both parties have contributed equally to the acquisition of marital assets. *Hostetler and Hostetler*, 269 Or App 312, 319, 344 P3d 126 (2015). If, however, a spouse successfully rebuts the presumption of equal contribution, then "the party holding the separate asset is entitled to receive the property in the division of marital assets unless other considerations make it 'just and proper in all the circumstances' to distribute the property otherwise." *Loomis and Loomis*, 247 Or App 127, 136, 268 P3d 700 (2011) (quoting ORS 107.105(1)(f); internal citations omitted).

Regardless of whether the presumption of equal contribution to marital assets is rebutted, then, ORS 107.105 ultimately requires courts to distribute marital assets as may be just and proper under all the circumstances. *Fuernsteiner-Perin and Perin*, 211 Or App 23, 31, 153 P3d 151 (2007).

The second type of marital property, premarital assets, are assets acquired before marriage and are not subject to the presumption of equal contribution. *Van Winkel and Van Winkel*, 289 Or App 805, 811, 412 P3d 243, *rev den*, 363 Or 224 (2018). Like marital assets, premarital assets are ultimately subject to any distribution that is "just and proper in all the circumstances." ORS 107.105(1)(f).

Determining what is just and proper in a given dissolution requires the court to take a holistic view of all the circumstances of the parties. *Fuernsteiner-Perin*, 211 Or App at 31. That inquiry "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Kunze*, 337 Or at 135. Some of the equitable considerations include the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and the extent to which a party has integrated a separately acquired asset into the common financial affairs of the parties through commingling. *Id.* at 136.

## APPLICATION

Within the legal framework, the parties focus their arguments on the trial court's decision that wife was entitled

to a portion of husband's contributions to Wagon Wheel and Yamhill under a just and proper analysis.

We understand husband to argue that the trial court committed two legal errors in its property division. First, husband asserts that the trial court relied solely on commingling, which, he contends, was error under *Massee and Massee*, 328 Or 195, 210, 970 P2d 1203 (1999). Second, husband asserts that it was legally impermissible for the trial court to have concluded that the parties commingled the properties into their joint financial affairs due to the short-term nature of the parties' marriage. We disagree with both arguments.

Although husband argues that the trial court's focus on commingling was legal error under *Massee*, the record demonstrates that the trial court followed the correct methodology in determining a just and proper distribution. The trial court first correctly identified the statutory and equitable factors that guide a just and proper analysis. It then went on to discuss the factor of commingling as well as the considerations that husband had encouraged wife to retire, sell her home, and rely on him financially. The trial court is not required to provide a detailed analysis on each of the factors to demonstrate that it understood and followed the correct legal methodology for property division. Thus, this case is unlike *Massee*, where the Supreme Court determined that the trial court failed to consider the statutory factors and relied solely on the short-term nature of the marriage.

As to husband's second argument that it was legally impermissible to find commingling given the short-term nature of the marriage, husband's focus on the short period that the parties lived together is misplaced. For one, it discounts that the parties remained married for an additional 19 months after they ceased living at the same physical address. In addition, a "short-term" marriage is defined not only by reference to the length of the marriage, but, more importantly, by the absence of commingling. *See Jenks and Jenks*, 294 Or 236, 242, 656 P2d 286 (1982) (defining a short-term marriage as one in which the "the marriage is terminated before the parties' affairs become commingled * * * to the point that the parties cannot readily be restored to their

pre-marital situations"); *Van Winkel*, 289 Or App at 814 (discussing that the two-year length of the marriage was not a determining factor; rather, the issue was whether the parties' financial arrangement, which included wife's separate real property, was commingled); *see also Brush and Brush*, 319 Or App 1, 12, 509 P3d 124 (2022) (explaining that "[t]he length of the marriage alone tells us little, if anything, about whether the social and financial objectives of ORS 107.105 (1)(f) are being met in a particular property division"). True, it is more likely that parties' financial affairs can be readily untangled if the marriage only lasted a short time, but it is not a guarantee. Whether commingling occurred requires a case-specific analysis of the interrelation of the parties' finances, no matter the duration of the marriage. Thus, the trial court did not commit legal error when it found that commingling had occurred even though the parties were only married for a short amount of time.

Apart from his assertions of legal errors, we understand husband to argue that the trial court's property division was an abuse of discretion because the record lacked evidence to show that he intended to transform separate assets into joint marital assets. Again, we disagree.

Determining whether acts of commingling have converted a separately acquired asset into a joint marital asset depends to a large extent on evidence of the parties' intent. *Van Winkel*, 289 Or App at 811. That analysis is not controlled by what the parties say about their intentions. It also requires a court to examine what the parties did with their assets during the marriage. *Lind and Lind*, 207 Or App 56, 68, 139 P3d 1032 (2006). Thus, in evaluating whether a spouse intended separately acquired assets to remain separate or become a joint marital asset, the court may consider a nonexclusive list of factors such as whether the disputed property was separately or jointly held, whether the parties shared control over the property, and how much the parties relied on the property as a joint asset. *Kunze,* 337 Or at 141.

Based on the record, the trial court did not abuse its discretion in determining that husband intended Wagon Wheel and Yamhill to become joint marital assets. Although the parties agree that husband had moved out of Wagon

Wheel by August 2018, the three-month mark of their marriage, wife did not initiate these divorce proceedings until March 2020. Within that roughly 19-month period, both properties were jointly titled in the parties' names, the parties entered into a joint mortgage for Yamhill, the parties intended to live together at both properties, wife controlled the decisions regarding the renovation and management of the properties, and wife managed the bank account used to pay for expenses related to Yamhill. In addition to evidence of the joint title and joint control of the properties, the trial court also expressly considered evidence that wife relied on husband's promise of financial support, including the housing and income provided by Wagon Wheel and Yamhill, when selling her own premarital property and moving into Wagon Wheel.

        In support of his position, husband relies heavily on his testimony that his intent was only for wife to share in the properties "in marriage," not in the event of a divorce. In so doing, husband demonstrates a misunderstanding of how a court determines whether an asset has been integrated into the common financial affairs of the marital partnership such that it is considered a joint marital asset. The court does not look at how the parties would like the property to be treated once the relationship ends, but instead on how the parties treated the property at the time of acquisition and during the marriage. *Lind*, 207 Or App at 68. Here, the trial court focused on the correct question. Husband's testimony that he wanted to share the properties "in marriage," coupled with testimony that he never intended to get divorced, his decision to forgo a prenuptial agreement, and his execution of a will leaving most of his estate to wife, even after the parties physically separated, speak directly to husband's intent to treat Wagon Wheel and Yamhill as joint marital assets.

        In sum, the trial court did not commit legal error by either focusing solely on commingling or in conducting the commingling analysis. The court properly considered commingling as one of the factors in making a just and proper determination because the interrelation of the parties' finances determines whether a marriage is considered "short-term," not simply the number of days shared under a

single roof. In addition, the record contains evidence to support the trial court's determinations that husband intended Wagon Wheel and Yamhill to be joint marital assets. It was thus within the range of legally permissible outcomes for the trial court to conclude that the parties commingled the properties and to award wife one-half of the equity in those properties. We therefore affirm the decision of the trial court.

Affirmed.